## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALFRED M. WINDER**

**Plaintiffs,**

v.

**LOUIS ERSTE, et al.**

**Defendants.**

**Civil Action No.  03-2623 (JDB)**

## MEMORANDUM OPINION

Plaintiff Alfred M. Winder is a former employee of the District of Columbia in the

Division of Transportation of the D.C. Public Schools ("DCPS").  He brings this action against

defendants the District of Columbia ("the District"), DCPS, and officials associated with DCPS,[1]

alleging that his employment was terminated in violation of his First Amendment rights and 42

U.S.C. § 1983 (Counts I and V), the D.C. Comprehensive Merit Personnel Act of 1978, as

amended by the Whistleblower Reinforcement Act of 1998, D.C. Code §§ 1-615.51 et seq.

(Count II), and the D.C. and federal Family and Medical Leave Acts, D.C. Code §§ 32-503 et

seq., and 29 U.S.C. §§ 2601 et seq. (Count III).  He also raises several causes of action under

D.C. common law, including defamation, tortious interference with contract and prospective

economic advantage, and civil conspiracy (Counts IV, VI, VII, and VIII).  Defendants have filed

motions to dismiss raising assorted procedural and substantive deficiencies in plaintiff's amended

---

[1]  The individual defendants are: Louis Erste, Chief Operating Officer of the DCPS
Division of Transportation; Kennedy Khabo, Operating Officer of the DCPS Division of
Transportation; Janet McCullough, Labor Partnership Manager at DCPS; and Elfreda Massie,
Acting Superintendent of DCPS.  Plaintiff sues each of these defendants in their individual as
well as official capacities, with the exception of Massie, who is sued only in her official capacity.

complaint.  For the reasons explained below, the Court grants the motions to dismiss as to all

claims except for those alleging violations of the First Amendment and 42 U.S.C. § 1983 and the

claims under the D.C. and federal FMLAs.

## BACKGROUND[2]

Plaintiff has had a long and distinguished career supervising and managing complicated

transportation systems both publicly and privately.  In 1999, he was hired as General Manager of

the DCPS Division of Transportation.  His responsibilities included the management,

administration, and operation of transportation services for special education students in the

District.  During his tenure, he shared in the responsibility for bringing the District into

compliance with various Orders issued in the case of Petties v. District of Columbia, Civil Action

No. 95-0148-PLF (D.D.C.), regarding the transportation of special education students to their

classes and school activities.[3]  The DCPS Division of Transportation was in court-ordered

receivership during the period of his management, and he made substantial improvements to the

system during his tenure.  Because of the receivership status of the DCPS transportation system,

he reported regularly to the Court's Special Master, Elise Baach, and court-appointed

Transportation Administrator David Healey.

From 2000 to 2003, plaintiff repeatedly spoke out on the resistance of his managers,

including Erste, Khabo, and McCullough, to complying with the Petties Orders.  He criticized the

---

[2]  The Court assumes the allegations of the amended complaint to be true for the purpose
of ruling on the present motions.

[3]  More background on the Petties litigation is set forth at Petties v. District of Columbia,
881 F. Supp. 63 (D.D.C. 1995), and Petties v. District of Columbia, 897 F. Supp. 626 (D.D.C.
1995).

cuts in transportation funding and diversion of large portions of the budget to other school departments, the District's refusal to meet staffing needs, the hiring of unqualified bus drivers, and the failure to repair and maintain transportation facilities, as well as other failures in the system.  Plaintiff also complained to the Special Master and her assistants about these problems on several occasions, and specifically stated that Erste did not support plaintiff's efforts at reform of the transportation for special needs children.  Erste, in return, sought to blame plaintiff for the alleged mismanagement, and complained that the transportation budget was too high.  In March of 2001, plaintiff filed an official complaint against DCPS and Erste alleging interference with his job duties and his ability to comply with court orders.

In the last year of plaintiff's employment with DCPS, the problems with compliance with the Petties Orders worsened.  Between April 2002 and January 2003, plaintiff made approximately 48 telephone calls to the Special Master to notify her and her staff about the numerous transportation department problems and the resulting difficulties in complying with the orders.  These problems included lack of drivers, an inadequate budget, inaccurate employee paychecks, safety and security deficits, and diversion of funding.

As a result of plaintiff's reporting these problems to the Special Master, defendants Erste, Khabo, and McCullough allegedly began to retaliate against plaintiff.  They accused him of being a poor performer, pressured him to resign, and encouraged school board employees and school district parents to raise complaints about plaintiff.  In the fall of 2002, Khabo falsely informed plaintiff's staff that plaintiff was about to resign, and threatened plaintiff's staff and deputy general manager with dismissal if they were not loyal to Erste.

On December 3, 2002, plaintiff forwarded to Erste an email questioning the removal of $1.2 million from the transportation budget.  These monies allegedly were spent instead on regular education students, which plaintiff reported to the Special Master.  The following month, plaintiff submitted a document in the <u>Petties</u> litigation to set the record straight on his efforts to comply with the Orders in that litigation.  The next day, the Financial Director of Transportation, Michael J. Rahim, was fired when he refused to tell Erste that plaintiff was at fault for the Division's failure to comply with the <u>Petties</u> Orders.  Defendants also informed Rahim that they wanted to terminate plaintiff because he was too close to the Special Master.  Khabo and Erste continued to pressure plaintiff directly to resign.

Plaintiff then filed a formal complaint with the Inspector General on February 24, 2003, alleging among other things that Erste and Khabo had submitted false affidavits in the <u>Petties</u> litigation and were retaliating against him for telling the truth to the Special Master about departmental problems in meeting the court orders.  He raised concerns that his rights under the First Amendment and the D.C. Whisteblower Reinforcement Act were being violated.

On March 20, 2003, plaintiff commenced 30 days of sick leave to undergo extensive oral surgery.  He was terminated while on leave, by letter dated April 3, 2003, delivered to his lawyer. He alleges that he has been unable to find similar work since then.  He was not selected for the position of Director of Parking Operations after Erste allegedly made false statements about him to the Deputy Mayor for Operations in May 2003.

## DISCUSSION

I.   **Dismissal of Certain Individual Defendants**

A.   **Defendant Khabo -- Adequacy of Service of Process**

Defendant Khabo moves to dismiss the complaint on the ground that plaintiff failed to effectuate proper service of process on him in compliance with Fed. R. Civ. P. 4(e).[4]  The affidavit of service filed by plaintiff states that the process server left copies of the summons and complaint with Beverly Khabo, defendant Khabo's wife, at 1701 Lawrence St. NE, Washington, DC on February 10, 2004.  Defendant Khabo's affidavit states that this address was neither his "dwelling house" nor his "usual place of abode" at the time service of process was purportedly executed (February 10, 2004).  He states that, in November 2003, he moved to a new address at 3510 General DeGaulle Dr., New Orleans, Louisiana.  He further states that he has not been served with the summons and complaint nor has he seen the summons and complaint.

Plaintiff opposes the motion on the ground that defendant Khabo has failed to provide sufficient evidence that he was improperly served, and specifically, that Khabo fails to explain why his wife's residence is not his residence or to offer additional evidentiary support that Louisiana is his primary place of residence.  Plaintiff also argues that Khabo has actual notice of this action, and that his co-defendant, DCPS, has elected to represent Khabo by filing the motion to dismiss.

---

[4] Rule 4(e)(2) provides that service on an individual may be accomplished "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."  Under Rule 4(e)(1), service also may be effected pursuant to the law of the state in which the district court is located; however, plaintiff has not invoked this provision.

The law is clear that "[t]he party on whose behalf service is made has the burden of establishing its validity when challenged." Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987); Norlock v. City of Garland, 768 F.2d 654, 656 (D.C. Cir. 1985) ("Once the validity of service of process has been contested, the plaintiff 'must bear the burden of establishing its validity.'") (quoting Aetna Bus. Credit v. Universal Decor, 635 F.2d 434, 435 (5th Cir. 1981)); Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 (1st Cir. 1986).  Valid service of process is necessary in order to assert personal jurisdiction over a defendant.  Mid-Continent Wood Products, Inc. v. Harris, 936 F.2d 297, 301 (7th Cir. 1991).  A defendant's actual notice of the litigation is insufficient to satisfy the service of process requirements under Rule 4.  Id.; Whitehead v. CBS/Viacom, Inc., 221 F.R.D. 1, 3 (D.D.C. 2004); Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997).

Plaintiff offers no evidence that contradicts Khabo's affidavit stating that he was not a resident at the place of service on February 10, 2004, and that his residence has been in New Orleans since November 2003.  Plaintiff only makes conclusory assertions that Khabo's evidence is insufficient to establish the absence of residency at the above-stated residence in Washington, D.C. -- an argument based on the presumption that the defendant bears the burden of proving the insufficiency of service of process.  However, as noted above, when a defendant contests the validity of service of process, as has been done here, the burden is on the plaintiff to establish its validity.  Plaintiff has failed to meet this burden.[5]  Additionally, there is no evidence in the record to indicate that defendant Khabo has attempted to evade service of process.  His affidavit attests

---

[5]  Plaintiff has failed to come forward with any evidence creating a genuine dispute as to Khabo's residency in Louisiana, and thus plaintiff's request for an evidentiary hearing also is denied.

that his change of residence occurred in November 2003, before this lawsuit was filed.

Accordingly, Khabo's motion to dismiss the complaint against him individually is granted.[6]

## B.      Propriety of DCPS as a Defendant

Defendant DCPS moves to dismiss the complaint on the ground that it is not suable as a separate entity under D.C. law.  Plaintiff argues that the D.C. Code makes DCPS sui juris by establishing it as an independent agency and that the course of conduct in the Petties litigation, in which DCPS purportedly was a named defendant, demonstrates that DCPS is a suable entity. Plaintiff further argues that the decision of the U.S. Supreme Court in Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658 (1978), addressing municipal liability for constitutional violations, stands for the broad proposition that school systems are directly subject to liability as "persons" under § 1983.

As a threshold matter, DCPS is not a suable entity under the D.C. Code.  See Kelley v. Morris, 400 A.2d 1045, 1047 (D.C. 1979) (holding that D.C. Code § 31-101a, now codified at § 1-204.95 (2001), vests control of the public schools in the Board of Education, which itself is not a suable entity); Tschanneral v. District of Columbia Bd. of Educ., 594 F. Supp. 407, 408 (D.D.C. 1984) (dismissing Board of Education as defendant based on Kelley, and noting that claims for injunctive relief were properly directed against Board members and school officials in their official capacities, while claims for damages must be made against the District of Columbia if District funds are to be reached); Graetz v. District of Columbia Public Schools, 1987 WL

---

[6] Although plaintiff filed an amended complaint after service of the original complaint, there is no proof of service in the record, and none of the parties have argued that the amended complaint should be treated as pending against Khabo.  Thus, this ruling effectuates the dismissal of the claims against Khabo in his individual capacity in their entirety.

8527, *1 (D.D.C.) ("The District of Columbia Public Schools . . . is not a suable entity under the District of Columbia Code").

Plaintiff's reliance on the Petties litigation for the proposition that DCPS is a proper defendant is misplaced.  DCPS was not a named defendant in that litigation.  Instead, the District, the Superintendent, and the Director of Special Education for DCPS were the named defendants.  The cases cited by plaintiff serve to confirm this fact.  See Petties, 881 F. Supp. at 64 n.1; Petties, 897 F. Supp. at 627.

Monell does not require a different result.  In that case, the Supreme Court addressed the issue whether local governments are wholly immune from suit under 42 U.S.C. § 1983, a precedent set by its earlier decision in Monroe v. Pape, 365 U.S. 167 (1961).  In holding that local governments do not have blanket immunity under § 1983, the Court did not broadly announce that all school boards are suable entities under § 1983.  Rather, the Court addressed whether municipalities are covered by the definition of "persons" in § 1983, and held that they are, recognizing that liability may attach by suing a municipal officer in his official capacity or by suing the State or local government, or a subdivision thereof, directly.  Monell, 436 U.S. at 691 & n.55, 697-99.  The Court referenced school boards in the context of explaining the basis for overruling Monroe, finding support in congressional actions in the years after that decision, where Congress had refused to extend the benefits of immunity announced in Monroe to school boards in other statutory regimes.  That discussion does not indicate that municipal liability must attach to school boards directly, where another municipal entity is the entity legally responsible for the school board's liabilities.  Thus, where, as here, municipal liability may attach simply by suing the proper municipal defendant -- the District of Columbia or one of its officials, as

opposed to DCPS -- <u>Monell</u> does not mandate that § 1983 actions must lie against school boards.

Because DCPS is not a suable entity under the D.C. Code, and federal law does not require

DCPS to be the named municipal defendant, the Court grants DCPS's motion to dismiss.

### C.      Propriety of Massie as a Defendant

Defendant Massie, the acting Superintendent of the DCPS, moves to dismiss this action

on the ground that her participation is unnecessary and redundant because she has been sued only

in her official capacity, which is equivalent to suit against the District of Columbia itself.

Plaintiff agrees that a suit against a public official in her official capacity is simply a suit against

the government entity which she represents.  <u>See</u> <u>Dominion CoGen, D.C., Inc. v. District of</u>

<u>Columbia</u>, 878 F. Supp. 258, 264 n.5 (D.D.C. 1995).  Although defendant is correct that this

creates a redundancy, there is no requirement that, because of the equivalence, the public official

defendant must be dismissed.  <u>Id.</u> (allowing suit to continue against D.C. officials sued in their

official capacities).  Additionally, as plaintiff correctly points out, the Supreme Court recognized

in <u>Monell</u> that a local government official is an appropriate defendant in a suit brought under

§ 1983 -- one of the claims asserted by plaintiff in this case.  <u>See</u> 436 U.S. at 691 n.55 ("our

holding . . . that local governments can be sued under § 1983 necessarily decides that local

government officials sued in their official capacities are 'persons' under § 1983 in those cases in

which, as here, a local government would be suable in its own name").  Accordingly, the Court

denies the motion to dismiss defendant Massie from this action.

**II.     Motions to Dismiss Specific Claims for Relief Pursuant to Rule 12(b)(6)**

    **A.     Standard of Review**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47.  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Conclusory legal and factual allegations, however, need not be considered by the court.  Domen v. Nat'l Rehabilitation Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

B.      **First Amendment Claim - Municipal Liability**

The District moves to dismiss the First Amendment claim brought pursuant to § 1983

(Counts I and V) on the ground that plaintiff has failed to allege an unconstitutional municipal

policy as required under <u>Monell</u>.  However, a § 1983 complaint may withstand a motion to

dismiss where it alleges at least one instance of misconduct and describes the factual basis of the

alleged municipal policy or custom that is responsible for such misconduct.  <u>See</u> <u>Atchinson v.</u>

<u>District of Columbia</u>, 73 F.3d 418, 422-23 (D.C. Cir. 1996) (holding that although "complaint

failed to identify a specific custom, policy statement or procedures that caused [plaintiff's]

injuries, dismissal was improper where complaint alleged "some factual basis" for a policy or

custom and "one instance of unconstitutional conduct").

Plaintiff argues that dismissal is inappropriate because he has alleged facts supporting the

claim that defendants had a "custom or policy" of resisting the <u>Petties</u> decrees and terminated his

employment because of his opposition to that policy.  Pl.'s Opp. to Def. DC's Mot. to Dismiss at

15.  However, for purposes of proving a <u>First Amendment</u> violation, as alleged in Counts I and

V, plaintiff must establish a "custom or policy" regarding conduct that violates plaintiff's First

Amendment rights, in contrast to conduct in violation of the <u>Petties</u> orders.

Nonetheless, construing the complaint in the light most favorable to plaintiff, the

amended complaint adequately alleges that the District officials responsible for establishing final

government policy regarding the <u>Petties</u> decrees had a custom or policy of taking retaliatory

action against plaintiff -- including firing plaintiff's staff and ultimately terminating plaintiff's

own employment -- for speaking out against defendants' alleged failure to comply with the court

orders.  <u>See</u> Am. Compl. ¶¶ 54, 58, 61, 68-71, 79, 84.   Liability may be established where

plaintiff can prove "an unconstitutional policy responsible for a single instance of misconduct."

Amons v. District of Columbia, 231 F. Supp. 2d 109, 116 (D.D.C. 2002) (quoting Atchinson, 73

F.3d at 423).  These allegations are sufficient to satisfy the notice pleading standard of Fed. R.

Civ. P. 8(a), and hence to withstand the motion to dismiss.[7]  See Leatherman, 507 U.S. at 168

(rejecting a heightened pleading standard for section 1983 suits against municipalities).

In the alternative, the District argues in its reply brief that, applying the balancing test

from Pickering v. Board of Ed. of Township High Sch. Dist. 205, 391 U.S. 563, 568 (1968), its

interest, as an employer, in promoting the efficiency of the public services it performs through

high-level employees outweighs any interest plaintiff may have had in speaking on a matter of

public concern.  However, the District makes this argument for the first time in its reply brief,

giving plaintiff no opportunity to respond.  Therefore, the Court denies this aspect of the motion

to dismiss without prejudice to renewal at an appropriate time.

## C.      Whistleblower Reinforcement Act Claim

### 1.      No Statutory Right of Action Against Supervisors

Count II of the amended complaint seeks to recover damages personally from defendants

Erste, Khabo and McCullough.   Erste moves to dismiss this claim on the ground that the

D.C. Whistleblower Reinforcement Act ("Act") does not create a right of action against

supervisors for damages.[8]

---

[7]  Although the complaint does not specify the person with final decisionmaking authority, this degree of specificity is not required at the pleading stage.  See Amons, 231 F. Supp. 2d at 115-16.

[8]  The arguments made in the motion apply with equal force to defendants Khabo and McCullough.

The Act creates an express right of action for equitable and compensatory damages against the District.  Section 1-615.54(a) provides:

> An employee aggrieved by a violation of § 1-615.53 may bring a civil action before a court or a jury in the Superior Court of the District of Columbia seeking relief and damages, including but not limited to injunction, reinstatement to the same position held before the prohibited personnel action or to an equivalent position, and reinstatement of the employee's seniority rights, restoration of lost benefits, back pay and interest on back pay, compensatory damages, and reasonable costs and attorneys fees . . . .  A civil action brought pursuant to this section shall comply with the notice requirements of § 12-309.

Section 12-309 requires that written notice of the suit be provided "to the Mayor" stating the approximate time, place, cause, and circumstances of the injury or damage alleged.  See Section II(C)(2), infra.  Defendant Erste argues that, because § 12-309 requires notice for suits brought against the District, this language in the Act demonstrates that a civil action under the Act may be brought only against the District.  Defendant Erste reasons that this reading is underscored by the evidentiary provision of the statute, which sets forth an evidentiary standard that is applicable only to the District.  That provision states:

> In a civil action . . . , once it has been demonstrated by a preponderance of the evidence that an activity proscribed by § 1-615.53 was a contributing factor in the alleged prohibited personnel action against an employee, the burden of proof shall be <u>on the employing District agency</u> to prove by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by this section.

Id. § 1-615.54(b) (emphasis added).

The Act's express provision of separate remedies against supervisors in the form of disciplinary action is cited by defendant Erste in further support of his reading of the Act.  This provision states:  "Upon receipt of an adjudicative finding that a protected activity was a contributing factor in an alleged prohibited personnel action, the appropriate agency head shall

immediately institute disciplinary action against the offending supervisor."  D.C. Code  § 1-615.58(10).  The Act further provides that the disciplinary procedures of Subchapter XVI-A apply (§§ 1-616.52-.54), which, <u>inter alia</u>, enable the supervisor to pursue a grievance for any disciplinary action taken against him or her and file an appeal with the D.C. Office of Employee Appeals ("OEA").  <u>Id.</u> § 1-615.58(11).

Plaintiff argues that the Court should find that the Act creates an implied right of action for damages against individual supervisors employed by the District.  Plaintiff's numerous arguments, in essence, can be distilled to one -- that the statute's remedial purpose should be construed broadly to further the Act's purpose of protecting employees who report malfeasance by other District employees.  That argument is insufficient to support an implied right of action.

The D.C. Court of Appeals applies the first three factors from the test articulated in <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975), to determine whether D.C. law creates an implied right of action. <u>Coates v. Elzie</u>, 768 A.2d 997, 1001 (D.C. 2001).[9]  The "ultimate issue" is one of legislative intent  -- "whether the legislature intended to create a particular cause of action, because 'unless such [legislative] intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'"  <u>Id.</u> at 1001 (quoting <u>Karahalios v. Nat'l Fed'n of Fed. Employees</u>, 489 U.S. 527, 532-33 (1989)).  The burden is on plaintiff to demonstrate that, in spite of the absence of any explicit

_____

[9]  These factors are:  "First, is the plaintiff 'one of the class for whose <u>especial</u> benefit the statute was enacted' . . .?  Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?"  <u>Coates</u>, 768 A.2d at 1001 (quoting <u>Cort</u>, 422 U.S. at 78).

authorization, the D.C. Council intended to imply a right to sue for damages beyond that expressly provided in the statute.  Id.

Here, plaintiff has failed to meet that burden.  The structure of the statute strongly indicates that the right of action set forth in § 1-615.54 was intended to run only against the District -- the pre-suit notice provision and evidentiary standards, as discussed above, apply only to the District.  Moreover, the provisions governing disciplinary proceedings against supervisors indicate that the D.C. Council gave consideration to the remedies that should be available against supervisors, and resolved the issue as set forth in D.C. Code § 1-615.58(10) and (11).

The only provision that arguably suggests that the D.C. Council intended the creation of a right of action against supervisors -- and a limited one at that -- is § 1-615.55(b).  This section states that:  "As part of the relief ordered in a judicial proceeding, any supervisor who is found to have violated § 1-615.53 [prohibiting retaliatory action for protected conduct] shall be subject to a civil fine not to exceed $1000."  However, the more reasonable reading of this provision is that it authorizes fines as part of the judicial relief available to the District in a judicial appeal from an OEA decision on a disciplinary action.  See D.C. Code § 1-616.52(b) (providing for appeals of disciplinary actions to OEA);  id. § 1-606.03(d) (providing for appeal of OEA decisions to Superior Court of the District of Columbia).  The imposition of a $1000 cap on fines against supervisors suggests that the D.C. Council considered the extent to which supervisors should be required to make a monetary payment for their actions, and limited it as expressly provided.[10]  It

_____

[10]  The little legislative history that has been cited to the Court is consistent with rejection of an implied right of action.  The District quotes an excerpt from the legislative history as stating: "the Committee rejects, however, the provision in the bill as introduced that would have made supervisors personally liable for damages, including punitive damages, flowing from their violations of whistleblower protections."  See Def. District of Columbia's Reply to Pl.'s Opp. to

would not make sense to interpret the statute to allow a maximum fine of $1000 against supervisors, but at the same time allow recovery of compensatory damages and attorneys fees against supervisors that would be likely to impose a far greater burden on supervisors than the civil fine.  Moreover, "fines" are commonly understood to be payable only to the government -- rather than to the person aggrieved by the offender's action.  See, e.g., D.C. Code § 1-1723 (fines deposited in Superior Court shall be deposited in the U.S. Treasury).  Thus, the statute should not be interpreted as allowing an aggrieved employee to recover that fine, and the possibility of a fine against the supervisor lends no support to the argument that the legislature intended to create a private cause of action.

Interpreting the statute as not creating a private right of action against supervisors in their individual capacities results in a more coherent reading of the statute.  As discussed in more detail below, the Act expressly bars actions against the District in all circumstances where strict compliance with the pre-suit notice requirement is lacking.  A statutory scheme that would allow actions to proceed against supervisors where a similar action is barred against the District (that is, where a plaintiff failed to comply with the pre-suit notice requirement) would not make sense. The entity with the most influence over the supervisor's action, and the ability to provide full relief on the claim, would be absent from the suit.  Moreover, a supervisor could be subject to substantial monetary liability even if the District as the employer controlled the supervisor's actions or otherwise was the primary cause of the adverse actions at issue.  The Court declines to

_____

District's Mot. to Dismiss at 14 (quoting Report of the Council of the District of Columbia Committee on Government Operations at 3 (April 28, 1998)).  However, because the report has not been submitted to the Court, and it is not otherwise readily available, the Court does not place substantial reliance on it.

interpret the statute to impose such a result absent a clear indication of legislative intent to this effect.  See Coates, 768 A.2d at 1002 (declining to find an implied right of action "without a clear indication in a statute or its history, that the legislature intended to create a general right to sue for money damages") (emphasis added).

The decision in Kelly v. Parents United for the District of Columbia Public Schools, 641 A.2d 159, 164 (D.C. 1994), is consistent with this holding.  In that case, the D.C. Court of Appeals found an implied right of action (limited to declaratory and injunctive relief) against the District "chiefly because the statute in question would have 'provide[d] no means of enforcement whatsoever unless a private right of action [were] implied." Coates, 768 A.2d at 1002 (quoting Kelly, 641 A.2d at 165).  That is in stark contrast to the Whistleblower Reinforcement Act, which sets forth both a civil judicial enforcement remedy against the District and administrative remedies against supervisors.  In light of the structure of the Act and the absence of any legislative history demonstrating an intent by the D.C. Council to create a right of action for damages personally against supervisors, the Court finds that the Act does not create such a private right of action.

**2.      Pre-Suit Notice Requirement of D.C. Code § 12-309**

The District moves to dismiss plaintiff's claims under the D.C. Whistleblower Reinforcement Act, as well as those under D.C. common law (Counts II, IV, VI, VII, and VIII), on the ground that plaintiff has failed to allege that he satisfied the mandatory pre-suit notice requirements of D.C. Code §§ 1-615.54(a) and 12-309.  Plaintiff responds that he substantially complied with the notice requirements by filing a complaint with the Office of the Inspector General on February 24, 2003 alleging malfeasance by defendants with respect to many of the

same events alleged in his judicial complaint, and by filing an appeal with the Office of

Employee Appeals on April 4, 2003 contesting his termination pursuant to the Whistleblower

Reinforcement Act.

Section 12-309 provides that:

> An action may not be maintained against the District of Columbia
> for unliquidated damages to person or property unless, within six
> months after the injury or damage was sustained, the claimant, his
> agent, or attorney has given notice in writing to the Mayor of the
> District of Columbia of the approximate time, place, cause, and
> circumstances of the injury or damage.  A report in writing by the
> Metropolitan Police Department, in regular course of duty, is a
> sufficient notice under this section.

Compliance with this requirement is "mandatory as a prerequisite to filing suit against the

District," and is to be narrowly construed against the claimant because it represents a waiver of

sovereign immunity.  District of Columbia v. Arnold & Porter, 756 A.2d 427, 436 (D.C. 2000);

Hardy v. District of Columbia, 616 A.2d 338, 340 (D.C. 1992).  The legislative history explains

that the purpose of the notice requirement (originally enacted by Congress in 1933) is "to protect

the District of Columbia against unreasonable claims and to assist it in the defense of the public

interest where claims are made within the . . . statute of limitations [but] so long after the event

that it is impossible for the District of Columbia to obtain evidence for use in the litigation which

may result."  Breen v. District of Columbia, 400 A.2d 1058, 1060 (1979) (quoting H.R. Rep. No.

2010, at 1 (1933)).

It is clear that plaintiff has failed to comply with the pre-suit notice requirement.  His

submissions to the Office of the Inspector General and the Office of Employee Appeals are

plainly inadequate.  The statute specifies that written notice must be sent to the Mayor and

establishes an exception only for MPD reports prepared in the regular course of duty.  See

Campbell v. District of Columbia, 568 A.2d 1076, 1078 (D.C. 1977) ("The statutory exception to

formal notice . . . is limited to police reports.").   Thus, courts have held that other written reports

that were not sent to the Mayor are inadequate to satisfy the pre-suit notice requirement.  See id.

(rejecting argument that Fire Department report in the District's possession satisfied § 12-309);

District of Columbia v. Ross, 697 A.2d 14, 19 n.6 (D.C. 1997) (rejecting claim that a

questionnaire prepared by a D.C. employee documenting a lead poisoning incident satisfied

§ 12-309).

Failure to comply with § 12-309, however, does not result in complete dismissal of

plaintiff's common law claims.[11]  Plaintiff correctly points out that  § 12-309 does not apply to

breach of contract claims.  See District of Columbia v. Campbell, 580 A.2d 1295, 1301-02 (D.C.

1990).  Morever, because the pre-suit notice provision applies only to claims for "unliquidated

damages" (see id. at 1301), § 12-309 does not bar plaintiff's other common law claims to the

extent he seeks liquidated damages and injunctive relief.  However, those claims are dismissed in

their entirety for the other reasons set forth in Sections II(D) and II(E) below.

### D.       Preemption of Common Law Tort Claims by CMPA

The District of Columbia argues that plaintiff's common law tort claims -- Counts IV, VI,

VII, and VIII -- are preempted by the D.C. Comprehensive Merit Personnel Act, D.C. Code §§ 1-

601.01 et seq. ("CMPA"). Although the Court concludes that plaintiff failed to comply with the

_____

[11]  In contrast, failure to comply with pre-suit notice requirements does result in complete
dismissal of the claims under the Whistleblower Reinforcement Act (Count II) -- including any
claim for equitable relief and liquidated damages --  because the Act specifies that compliance
with § 12-309 is required before bringing a civil action for any of the remedies authorized
thereunder.  D.C. Code § 1-615.54(a).

statutory pre-suit notice provisions as to these claims, it is still necessary to address the CMPA preemption issue because, in the absence of preemption, the common law claims survive to the extent they seek equitable relief and liquidated damages against the District.  Plaintiff responds that the CMPA's preemption of common law claims is limited to circumstances where the wrongful treatment or injury is cognizable as a personnel issue under the Act and that the wrongful treatment alleged by plaintiff does not fall into that category.

In District of Columbia v. Thompson, 593 A.2d 621 (D.C. 1991), the D.C. Court of Appeals held that the CMPA "provide[s] District employees with their exclusive remedies for claims arising out of employer conduct in handling personnel ratings, employee grievance, and adverse actions" – the types of employer actions covered by Subchapters XVI-A and XVII  of the CMPA.  Id. at 635 (emphasis added).  Thus, the court dismissed a plaintiff's claims of defamation and intentional infliction of emotional distress that arose out of disputes with her supervisor over his criticisms of her performance, denials of leave requests, and a refusal to promote, but allowed plaintiff's claims of assault and battery to go forward because they were not "personnel" actions covered by the CMPA.  Id. at 625, 635.  In King v. Kidd, 640 A.2d 656 (D.C. 1993), the D.C. Court of Appeals reiterated that common law tort claims are only preempted by the CMPA where the wrongful treatment or injury in a particular case is "cognizable as a 'personnel' issue under the Act's 'performance ratings,' 'adverse actions,' and 'employee grievances' provisions."  Id. at 663 (holding that claim of intentional infliction of emotional distress was not preempted where it was based on quid pro quo sexual harassment and subsequent retaliation, rather than on a personnel action).

Applying the preemption standards articulated by the D.C. Court of Appeals, this Court finds that the CMPA preempts plaintiff's defamation claim under Count IV and the claims under Counts VII and VIII in their entirety -- the claims for breach of contract, tortious interference with contract, and civil conspiracy to force plaintiff from his job.  These claims are based on defendants' negative comments about the performance of plaintiff's duties, defendants' alleged interference with plaintiff's ability to perform such duties, and the termination of plaintiff's employment and benefits  (Am. Compl. ¶¶ 99-100, 113-16, and 117-22) -- matters that fall squarely within the provisions for "grievances" and "adverse actions" covered by the CMPA.  See D.C. Code § 1-603.01(10) (defining "grievance" broadly and stating that "adverse actions" include actions "resulting in removal [or] suspension"); D.C. Code §§ 1-616.51 to -.54 (Subchapter XVI-A provisions setting forth remedies for grievances and removals).

It is less clear whether the CMPA also preempts plaintiff's claim for tortious interference with prospective advantage in Counts IV and VI (see Am. Compl. ¶¶ 99-103, 108-112, ).  These claims are based primarily on "personnel actions" (e.g., the criticisms of plaintiff's performance and his termination from employment), but address the impact of those actions outside of his employment as General Manager for the DCPS Division of Transportation -- that is, the impact on plaintiff's long-term job prospects.  On balance, the Court believes that D.C. law suggests that, with one exception noted below, these tort claims are preempted because, first, the personnel actions underlying these claims could have been grieved under the CMPA, and second, to hold otherwise would allow all personnel actions to form the basis of a tort whenever a plaintiff alleges that the personnel action had an impact on a future employment prospect -- a claim that could be made about many adverse actions by an employer, including actions that squarely fall

within the definition of "personnel action" (e.g., performance reviews and terminations for cause). This type of end-run around the CMPA is certainly not contemplated by either the CMPA itself or <u>Thompson</u> and its progeny.

However, one aspect of plaintiff's claim for tortious interference with prospective economic advantage is based on a factual allegation that would not qualify as a personnel action covered by the CMPA. In Count IV, plaintiff has alleged that, in May 2003, after his termination, defendant Erste told the D.C. Deputy Mayor for Operations that he should not consider plaintiff for the position of Director of Parking Operations because he was "persona non grata." Am. Compl. ¶ 100. Construing this allegation in the light most favorable to plaintiff, the Court interprets plaintiff to allege that Erste was not simply responding to an inquiry about plaintiff's past performance as a District employee, but engaging in independent conduct to prevent plaintiff from obtaining employment based on personal animus. Such action, if proven, would not be a "personnel action" covered by the CMPA, and could not be grieved by plaintiff under the CMPA. Accordingly, the claim for tortious interference with prospective economic advantage in Count IV is not preempted by the CMPA in this respect. (However, as discussed in more detail in Section II(E) below, the claims for tortious interference with prospective economic advantage still cannot proceed because of deficiencies in the amended complaint.)

Plaintiff seeks to avoid application of the CMPA preemption doctrine on the separate ground that he was a contract employee from 2002 to 2003, and thus the CMPA does not apply to him. <u>See</u> Pl.'s Opp. to DC's and Erste's Mot. to Dismiss at 12. However, the CMPA states that, unless otherwise required by the context, an "employee" is: "an individual who performs a function of the District government and who receives compensation for the performance of such

services."  Id. § 1-603.01(7).  Under the plain language of the statute, contract employees are

covered by the grievance provisions of the CMPA, which specifies that the grievance procedures

apply to "employees."[12]

        For the foregoing reasons, the Court grants the District's motion to dismiss the claims for

defamation, breach of contract, tortious interference with contract and prospective economic

advantage, and civil conspiracy, as set forth in Counts IV, VI, VII, and VIII, as preempted by the

CMPA, with the exception noted above for Count IV.  This dismissal also applies to those claims

to the extent plaintiff asserts them against defendants Erste, McCullough, and Massie, in their

individual capacities.  The Thompson opinion is clear that preemption extends to common law

tort claims against supervisors, and the rationale demands such an extension.  See Thompson,

593 A.2d at 634.  The court reasoned that "the Council 'plainly intended' CMPA to create a

mechanism for addressing virtually every conceivable personnel issue among the District, its

employees, and their unions -- with a reviewing role for the courts as a last resort, not a

supplementary role for the courts as an alternative forum."  Id. (emphasis added).  The court

based its decision in part on the "burdens" imposed on supervisors from defending against

common law claims arising out of personnel actions, which would in turn undermine the merit

personnel system:  "For example, supervisors are likely to be hesitant to enforce employee

discipline, preferring silence to the fear of being hauled into court for fulfilling their statutory

duties."  Id.  Thus, the court in Thompson broadly held that "the Council intended CMPA to

─────────────────

        [12]  The context of Subchapter XVII, addressing the relationship and rights with respect to
labor organizations, suggests that the term "employees" may have a narrower meaning there,
because contract employees would appear to be excluded from employees covered by labor
organizations.  However, the Court need not resolve that issue, having determined that
Subchapter XVI-A on grievances does apply to contract employees.

provide District employees with their <u>exclusive</u> remedies for claims arising out of employer conduct" in handling personnel actions.  <u>Id.</u> at 635.  This application of the preemption holding to claims asserted against supervisors in their individual capacities is confirmed by the court's order reversing the judgment entered by the trial court against plaintiff's supervisor with instructions to dismiss.  <u>Id.</u>

## E.    Tortious Interference with Prospective Economic Advantage

The only common law claim that survives preemption by the CMPA is the part of Count IV alleging tortious interference with prospective economic advantage, based on Erste's post-employment actions against plaintiff in May 2003.  Plaintiff alleges that Erste made defamatory statements that resulted in plaintiff's inability to find employment in the government transportation community, and specifically resulted in his failure to be selected for the Director of Parking Operations position.

To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference inducing or causing termination of the relationship or expectancy; and (4) resultant damage.  <u>Bennett Enters., Inc. v. Domino's Pizza, Inc.</u>, 45 F.3d 493, 499 (D.C. Cir. 1995).  Defendants argue that plaintiff has failed to allege any facts demonstrating that he had a valid business relationship or expectancy with any prospective employer, both because he was an at-will employee and because plaintiff has failed to allege that he had a valid expectancy of obtaining the positions for which he applied.  Plaintiff responds that, under <u>McManus v. MCI Communications Corp.</u>, 748 A.2d 949, 957 (D.C. 2000), "prospective advantage" includes business expectancies "not grounded in

24

present contractual relationships, but which are commercially reasonable to anticipate, [and] are considered to be property."

Construing the complaint in the light most favorable to plaintiff, the Court finds that plaintiff has failed to allege a valid business expectancy sufficient to support this claim. Although it is correct that not all business expectancies must be grounded in contract, the case law recognizes the common-sense proposition that there will be situations where the expectancies may be "too remote" to give rise to a "business expectancy." See Carr v. Brown, 395 A.2d 79, 84 (D.C. 1978) (no "business expectancy" in permits that were subject to government approval); Gross v. Davis, 2003 U.S. Dist. LEXIS 3427, * 10-11 (D.D.C.) (rejecting tort claim where plaintiff failed to provide evidence that he had a valid expectation that he would receive jobs). Here, the only prospective position identified by plaintiff is that of Director of Parking Operations for the District. However, plaintiff has failed to allege any facts whatsoever indicating that he had a valid expectation that he would receive the job. Plaintiff does not allege, for example, that he had informal assurances of being hired or that he had otherwise been advised that he was on a track for being selected for the position. Accordingly, the Court dismisses this claim for failure to state a claim on which relief can be granted.

### F.    D.C. and Federal Family and Medical Leave Acts

The D.C. Family and Medical Leave Act of 1990, D.C. Code §§ 32-501 et seq., and the federal Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., make it unlawful for an employer to terminate an employee in retaliation for taking leave for serious medical or family needs. The elements of a prima facie case are the same under both Acts: (1) plaintiff engaged in a protected activity under the Acts; (2) he was affected by an adverse employment action; and

(3) the protected activity and the adverse employment action were causally connected.  See

Gleklen v. Democratic Congressional Campaign Comm., 199 F.3d 1365, 1368 (D.C. Cir. 2000)

(listing elements of prima facie case under federal FMLA); Chang v. Inst. for Public-Private

P'ships, Inc., 846 A.2d 318, 329 (D.C. 2004) (listing elements of prima facie case under D.C.

FMLA).

The District and Erste move to dismiss the claims under both Acts on the ground that

plaintiff has failed to allege a causal connection between the sick leave taken and the termination

of his employment.  However, "[t]emporal proximity is often found sufficient to establish the

requisite causal connection for such [FMLA] claims."  Gleklen, 199 F.3d at 1368.  Here, plaintiff

was on sick leave when his employment was terminated.  The events were close enough in time

to infer a causal nexus.  See id. (finding facts sufficient to infer a causal nexus where employer

took adverse action "a few weeks" after employee engaged in protected activity).  Although, at

first glance, the FMLA claims lack plausibility in light of plaintiff's extensive allegations that his

termination was caused by his criticisms of the District's actions in connection with the Petties

decrees, the Court must construe the allegations in the light most favorable to plaintiff at this

stage of the litigation, and therefore denies the motion to dismiss.  Because the D.C. and federal

FMLAs authorize employees to bring civil actions only against an "employer," however, this

claim may proceed solely against the District and is dismissed as to the defendants sued in their

individual capacities.  See D.C. Code § 32-510(a); 29 U.S.C. § 2617(a)(1)-(2).

## CONCLUSION

The Court grants in part and denies in part the motions to dismiss as set forth above.  The result of this ruling is that the only claims that remain pending are the First Amendment claims under § 1983 in Counts I and V against the District, against Erste and McCullough in their individual capacities, and against Erste, McCullough, and Massie in their official capacities; and the claims in Count III alleging violations of the D.C. and federal FMLAs against the District. The claims in plaintiff's amended complaint are dismissed in all other respects.  An appropriate Order accompanies this Opinion.

/s/
_____
JOHN D. BATES
United States District Judge

Signed this  31st   day of March, 2005.


Copies to:

Brian Cooper Plitt
1239 C Street, SE
Washington, DC 20003
(202) 546-5493
Fax: 202-546-8478
Email: cooperwitz@aol.com

John F. Karl, Jr.
MCDONALD & KARL
900 17th Street NW
Suite 1250
Washington, DC 20006
(202) 293-3200
Fax: (202) 429-1851
Email: jfklaw@igc.org
        *Counsel for Plaintiff*

Steven J. Anderson
OFFICE OF CORPORATION COUNSEL
P.O. Box 14600
Washington, DC 20044-4600
(202) 724-6607
Fax: (202)727-0431
Email: steve.anderson@dc.gov
        *Counsel for Defendants*