UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALFRED M. WINDER<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No. 03-2623 (JDB) |

## MEMORANDUM OPINION

Plaintiff Alfred M. Winder formerly served as General Manager of the Division of Transportation of the D.C. Public Schools ("DCPS"). After he was terminated from employment in 2003, he brought this action against several DCPS officials and the District of Columbia for alleged violations of his First Amendment and due process rights under the U.S. Constitution, and of various rights under District of Columbia law and the federal and D.C. Family and Medical Leave Acts. See Winder v. Erste, 511 F. Supp. 2d 160 (D.D.C. 2007); Winder v. Erste, No. 03-2623, 2005 WL 736639 (D.D.C. Mar. 31, 2005). All but one of the claims were resolved following motions to dismiss and motions for summary judgment. See Winder, 511 F. Supp. 2d at 170-87. The sole remaining claim is Count IX of the Second Amended Complaint alleging breach of a written employment contract based on the District's alleged denial of benefits due under the contract. The District of Columbia has now moved for summary judgment.[1] For the reasons explained below, the Court will grant in part and deny in part defendant's motion, and enter a final judgment in this action.

---

[1] For ease of reference, the Court will refer to the memorandum and reply memorandum in support of the District's motion for summary judgment on Count IX as "Def.'s Mem." and "Def.'s Reply," respectively. Winder's brief opposing the District's motion will be cited as "Pl.'s Opp.," and his response to the District's reply will be cited as "Pl.'s Surreply."

## BACKGROUND

The factual background of this matter is set forth more fully in the Court's opinion on summary judgment, see 511 F. Supp. 2d at 166-70, and is repeated here only as needed. Following the Court's resolution of defendant's initial motions for summary judgment, the Court held a status hearing on October 25, 2007, to address further proceedings on the alleged breach of written employment contract asserted in Count IX. That count alleges that the District breached the contract by denying Winder payment for unused compensatory time ("comp time"), sick and annual leave, and pension contributions:

> 126. . . . [Louis] Erste, acting on behalf of DCPS, represented that Winder would continue to accrue compensatory time, as he had done prior to the execution of the Written Employment Contract, and that he would retain the right to be compensated for more than 200 hours of compensatory time that he had accumulated prior to the execution of the Written Employment Contract.
>
> 127. . . . Defendants breached the Written Employment Contract by denying Winder the sick and annual leave and pension contributions to which he was entitled pursuant to DCPS's policies and guidelines, as incorporated into ¶ 16 of the Written Employment Contract. Defendants breached the Written Employment Contract by denying Winder payment for the compensatory leave he had accumulated prior to his appointment to the position of General Manager of Transportation and for the compensatory leave he accumulated as General Manager of Transportation . . . .

At the status hearing, it became apparent that Winder had not presented the District of Columbia with a statement of the sums allegedly due to him under that contract. Therefore, Winder was ordered to provide the District with a claim letter itemizing all benefits that he contends are due under the contract, and the District was ordered to respond with a decision letter. See Order (filed Oct. 25, 2007).

> In his subsequent claim letter, Winder states that he seeks the following sums:
>
> -- Compensatory time (total hours unspecified):  $45,260.97
> -- Annual leave (210 hours):  $10,452.00
> -- Sick leave (eight day absence for oral surgery prior to termination):  $3,185.37

      -- Pension: $28,673.46
      -- "Shortchanged" paycheck " resulting from DCPS switch in payroll systems: $889.20

See Pl.'s Notice of Filing Itemization of His Claim of Contract Benefits (filed Dec. 5, 2007). He thus requested a monetary payment of $59,787.54, plus his pension, with interest accruing from February 2003 to the present. Id. He later submitted a second letter to the District which made clear that almost all of the comp time claimed (except for 16 hours) pre-dated the one-year period covered by the contract at issue in Count IX. See Letter from John Karl to Steven Anderson, dated Dec. 21, 2007 and accompanying comp time sheets (Exhibit 1 to Def.'s Mot. for Summ. J.).

      In response, the District conducted an audit of Winder's payroll records, and responded to Winder by letter dated January 11, 2008. See Def.'s Response to Pl.'s Claim Letter at 2 (filed Jan. 11, 2008). The District denied that Winder was entitled to payment for any comp time, based on the rules governing salaried Executive Service employees and the limited period covered by the contract. Id. at 1-2. As to annual leave and sick leave, the District agreed in principle that Winder was entitled to payment for unused annual leave and the sick leave taken prior to Winder's termination. Id. at 2. However, its records showed that Winder already had been paid for an annual leave balance of 234 hours upon his separation, in the amount of $11,647.12 (gross) on May 2, 2003. Id. The District noted that its audit further showed that Winder was still owed a payment for four hours of annual leave. Id. The District's audit also revealed that Winder had not been paid for the period of his employment between March 8, 2003 and his date of termination, April 3, 2003 -- a period encompassing the eight day absence for oral surgery. Id. The District determined that he should be paid for this 176 hour period -- an amount greater than that sought by plaintiff for sick leave. The District thus stated its intent to make a gross payment of $8,958.60 to Winder to cover the 4 hours of remaining annual leave and 176

hours for the last weeks of his employment.  Id.

As to Winder's claim for pension benefits, the District represented that Winder was a vested participant in the pension plan, but directed him to go through the pension plan's procedures to claim a refund.  Id. at 2.  The District did not respond to Winder's claim that a paycheck had been shortchanged during a change to the payroll system.

The District then filed a motion for summary judgment seeking an order consistent with its response to plaintiff's claim letter. Supplemental briefing became necessary when, in its reply brief, the District changed its position on Winder's entitlement to pension benefits, now denying that Winder could obtain any pension benefits because, in fact, he had not become vested.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to

the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

### I.     Sick and Annual Leave

Sick leave and annual leave are no longer in dispute. The District represents that it owes Winder for 176 hours for the period between March 8, 2003 and his date of termination, April 3, 2003 -- a period the covers the time that Winder was out on sick leave. See Glendell Bailey Affidavit ¶ 11 (Exhibit 2 to Def.'s Mot. for Summ. J.). Winder agrees that payment for this 176 hour period would resolve his claim with respect to sick leave. See Pl.'s Opp. at 6 & n.3. The District further represents that it already has paid Winder for his unused annual leave of 234 hours through a payment of $11,647.12, and that it owes Winder only for four hours of annual leave revealed by a recent audit. See Bailey Affidavit ¶ 8. Winder admits receiving the above payment for his unused annual leave, and agrees that he is owed only for the remaining four hours. Pl.'s Statement of Material Facts ¶¶ 5-6. Therefore, the Court will enter judgment in favor of Winder in the amount of $8,958.60, representing 180 hours paid at the stipulated rate of $49.77 per hour.

### II.    Comp Time

Whether the District must pay Winder for any unused comp time is vigorously contested. Winder acknowledges that the employment contract is silent on the subject of comp time, but contends that DCPS Superintendent Arlene Ackerman orally promised him during his previous

5

years of service in the same job that he would be paid for overtime hours worked; he further argues that he is entitled to comp time under the District's relevant regulations.  See also Pl.'s Opp. at 2-5; Pl.'s Surreply at 1-4.  The District responds that the plain language of the contract does not provide for comp time and, further, that the parol evidence rule precludes consideration of Ackerman's alleged promise.  See Def.'s Mem. at 6-8; Def.'s Reply at 1-6.  The District also contends that, in any event, the District's regulations do not authorize an award of comp time to Winder because he was an Executive Service employee.  The Court first considers whether payment for comp time pre-dating the contract can be recovered under the contract, and then considers whether, for the period covered by the contract (July 2002 to July 2003), comp time is part of the agreement.  The Court concludes that comp time is not recoverable under the contract in either scenario.

The written contract states that it covers DCPS's agreement to "employ [Winder] as its General Manager of Transportation commencing on July 22, 2002," for a one-year period.  See Second Am. Compl., Ex. 1, ¶¶ 13, 15.  As to benefits and salary, it states:

> 14. Your annual salary will be $103,530.
>
> 15. Salary reviews will be based upon your achievement of previously established objectives and your performance.  Your salary will be reviewed annually.  The tenure of this contract is one year from the commencement date.
>
> 16. You shall be entitled to the full range of fringe benefits including a health care benefit plan; disability and life insurance; and an employer paid pension plan with a contribution by DCPS of 7% of total compensation.  Sick an annual leave will be provided according to DCPS's policies and guidelines.

Id. ¶¶ 14-16.  There is no reference to comp time in the contract, nor does any term in the contract imply that comp time is an available benefit or that comp time earned in prior years is covered by the contract as a carried-over benefit.

Winder focuses primarily on whether he is entitled to payment for comp time earned in the years before the contract was signed, based on a promise allegedly made by former Superintendent Ackerman. See Pl.'s Opp. at 1-2 ("nearly all of the time for which Winder seeks compensation in this lawsuit predates his signing of the July 17, 2002 letter agreement" and was directed by Ackerman). He has submitted a declaration stating that "Ackerman promised me that I would be paid for those overtime hours I worked," and "placed no limitation on when I could take the comp time." Decl. of Alfred Winder ¶ 4 (filed Mar. 6, 2008). He contends that his testimony on the subject of comp time is admissible as an additional consistent term of his contract, relying on the principle that where an agreement is only "partially integrated" -- that is, where the writing represents the agreement of the parties on the matters stated therein but where there are additional consistent oral terms -- evidence of the additional oral terms is admissible. See Pl.'s Surreply at 2 (citing Lumpkins v. CSL Locksmith, LLC, 911 A.2d 418, 423 n.3 (D.C. 2006)).

As the District points out, however, Ackerman left DCPS on July 18, 2000 -- two years before the contract at issue was signed. See Def.'s Response to Pl.'s Claim Letter at 2; Def.'s Mem. at 7. Hence, there is not even a remote possibility that Ackerman was involved in any discussions underlying the written contract at issue. Winder offers no other evidence indicating that DCPS promised to pay him for previously earned comp time as a part of his employment agreement for the one-year period commencing on July 22, 2002. Therefore, the Court finds no basis for concluding that such carried-over comp time was an additional term of the agreement.

Winder also contends that the comp time pre-dating the contract was owed under previous contracts that he signed. See Pl.'s Opp. at 1, 3-5. However, Winder's second amended complaint pleads a breach of contract based only on the July 2002 written employment contract.

7

See Second Am. Compl. ¶¶ 123-127 (referring repeatedly to "the Written Employment Contract," described as the "one-year written employment contract dated July 17, 2002").  Count IX of the complaint does not plead a breach of contract claim based on any earlier contracts, and Winder's attempt to add such a claim through summary judgment briefing is impermissible.  See Mazloum v. District of Columbia, 442 F. Supp. 2d 1, 12 n.7 (D.D.C. 2006) (where "amended complaint . . . does not make a claim . . . plaintiff cannot further amend his complaint through an opposition brief.").

   The Court next turns to comp time allegedly earned during the one-year period covered by the contract.  Winder alleges that he is entitled to payment for 16 hours of comp time earned during this period.  See Pl.'s Opp. at 2.  Again, he admits that the written contract contains no provision for comp time, but contends that the regulations in effect at the time the contract was signed provide for the accrual of comp time.  Id. at 3-5 (citing District Personnel Manual § 4.12 (2003)).  However, the regulations cited by Winder address comp time only for "Wage Service Schedule" employees and "District Service Schedule" employees.  See District Personnel Manual § 4.12(a).  But Winder was a member of the Executive Service during the one-year period covered by the contract.  See Winder, 511 F. Supp. 2d at 178-79.  The D.C. regulations in effect from 2002 to 2003 provided that "[t]he rights of employees serving in positions included in the Executive Service . . . are described in Chapter 10 [entitled "Executive Service"] of these regulations [Title 6 of the D.C. Municipal Regulations]."  D.C. Mun. Regs. tit. 6, § 201.1.  Chapter 10 addresses the crediting of annual and sick leave, but makes no provision for comp time.  See id. § 1006.1-.19 (2002-2003).  Simply put, the regulations in effect at the time of the contract provide no support whatsoever for Winder's claim for comp time. Accordingly, the Court will grant the District's motion for summary judgment with respect to Winder's claim for comp time in Count IX.

**III.     Pension Benefits**

The last category of benefits in dispute is pension benefits.  Winder's second amended complaint alleges that the District breached the employment contract by denying him "pension contributions to which he was entitled pursuant to DCPS's policies and guidelines, as incorporated into ¶ 16 of the Written Employment Contract."  Second Am. Compl. ¶ 127.  Winder contends that he became vested in his pension, and requests the value of his pension as of February 2003 -- $28,673.46, according to his calculations -- plus interest.[2]  See Winder's Claim Letter at 2.  The District initially agreed that Winder's pension benefits vested prior to his departure, but directed him to apply directly to the retirement fund for a refund, noting that "the District does not control Mr. Winders 401(a) funds."  See Def.'s Response to Pl.'s Claim Letter at 2; see also Def.'s Mem. at 8-9.  However, the District changed course in its reply brief, stating that it was "mistaken" in its earlier representations because, under the applicable regulations, Winder's "pension benefits did not 'vest' because he did not work for the District for the five year minimum period required by the [Section 401(a)] plan."  Def.'s Reply at 6-7.  The Court then granted Winder leave to file an additional brief on the subject.  See Minute Order (filed Apr. 8, 2008).  The Court does not lightly countenance such eleventh-hour reversals in litigation position, but, after reviewing the regulations, is constrained to conclude that the denial of pension contributions is not in breach of the contract.

---

[2]  The Court has doubts as to the accuracy of this sum.  Under the contract, DCPS was obligated to make a contribution of 7% total compensation.  Seven percent of Winder's salary for the one-year term of the contract comes to approximately $7,247.  The Court infers that Winder derived his figure from the pension contributions under the contract at issue, plus his other contracts for his prior years of employment with the District -- contracts that are beyond the scope of Count IX.  The exact figure is immaterial, however, in light of the Court's resolution of this issue.

The contract provides that "[Winder] shall be entitled to the full range of fringe benefits including . . . an employer paid pension plan with a contribution by DCPS of 7% of total compensation." Second Am. Compl., Ex. 1, ¶ 16. As Winder acknowledges in his complaint, the pension contributions are "pursuant to DCPS's policies and guidelines," which necessarily include the regulations governing the District's Section 401(a) plan. See id. ¶ 127. Indeed, the contract's reference to "the full range of fringe benefits including" the pension plan indicates that the benefit offered is one under the existing regulatory regime, rather than one unique to the contract. Furthermore, as the Court has previously held, "[a] person making or seeking to make a contract with a municipal corporation is charged or imputed with knowledge of the scope of the agency's authority [and its agents'] authority.'" Winder, 511 F. Supp. 2d at 178 (quoting Marvin L. Leonard v. District of Columbia, 801 A.2d 82, 86 (D.C. 2002) (alterations in original)); accord Orange v. District of Columbia, 59 F.3d 1267, 1271 (D.C. Cir. 1995).

The D.C. Defined Contribution Pension Plan regulations provide that:

A participant shall have a vested interest in his or her benefits in the Plan when the participant does any of the following:

> (a) Attains five (5) years of creditable service covered employment pursuant to § 2603.
>
> (b) Becomes disabled; or
>
> (c) Dies.

D.C. Mun. Regs. tit. 6 § 2602.3 (2002-2003). Consistent therewith, section 2605.7 provides that "[a] participant shall have no right to any contributions or income allocated to his or her active account until the participant becomes vested in accordance with § 2602.3." Id. § 2605.7; see also § 2605.10 (further providing that "[i]f a participant separates from service prior to attaining five (5) years of creditable service, and is not reemployed with the District . . . then his or her

contributions and income . . . shall be forfeited.").

Moreover, federal law limits the District's ability to give participants greater flexibility with respect to vesting of pension contributions.  The District of Columbia Defined Contribution Pension Plan is designed to meet the requirements of sections 401(a) and 501(a) of the Internal Revenue Code governing deferred compensation.  See D.C. Mun. Regs. tit. 6 § 2601.1.  Under the Internal Revenue Code, a pension plan "shall not constitute a qualified trust under [section 401] unless the plan . . . satisfies the requirements of section 411 (relating to minimum vesting standards)."  26 U.S.C. § 401(a)(7).  It appears that the D.C. regulations were designed to satisfy the requirements of section 411(a)(2)(A)(ii), which allows a pension plan to satisfy section 411 by imposing a minimum five-year vesting period for an employee to have a right to 100 percent of the benefit derived from the employer's contributions.  Id. § 411(a)(2)(A)(ii).

It is undisputed that Winder's period of employment with the District falls below the five-year threshold.  He began his employment with the District in August 1999, and continued that employment through a series of one-year contracts until his termination on April 3, 2003.  See 511 F. Supp. 2d at 166, 169; see also Winder Decl. ¶¶ 1-2.  This amounts to three years and eight months of service, well short of the minimum vesting period established by regulation pursuant to federal law.

In short, the pension benefits referenced in the contract were clearly subject to the law of the District of Columbia governing such benefits, which, in turn, is governed by federal law.  Because Winder failed to satisfy the minimum vesting period required by law, the District's refusal to pay a refund of the seven percent pension contribution does not violate the contract, and the District is entitled to summary judgment.

**IV.     Underpayment of Salary from Payroll System Change**

Winder's final claim is based on an alleged underpayment of $889.20 in salary that occurred when DCPS made a change in its payroll system. See Winder Supplemental Decl. ¶ 4 (filed Apr. 22, 2008). But Winder's claim for breach of contract contains no mention of breach based on an underpayment due to a payroll system error. See Second Am. Compl. ¶¶ 123-37. Indeed, there is no reference to such an underpayment anywhere in the 135 paragraphs of the second amended complaint. Thus, his complaint does not plead a claim based on underpayment of salary in violation of the contract, and, as noted earlier, Winder may not add a new claim through summary judgment briefing. See Mazloum, 442 F. Supp. 2d at 12.

Any such relief is also unavailable under Count IX because, taking Winder's assertion as true, the underpayment at issue is not covered by the contract. As previously noted, the contract governs employment for the one-year period commencing on July 22, 2002. Winder's testimony plainly indicates that the underpayment pre-dated this period. See Winder Supplemental Decl. ¶ 4 ("Eric Azumah, Controller of DCPS, told me about the loss in pay resulting from the change in payroll systems used by DCPS. When I met with Azumah <u>in late 2001</u> in his office, I saw my name and the amount of $889.20 on a list of approximately 50 people shortchanged because of the change in payroll systems.") (emphasis added).[3] Plaintiff's request for relief based on this alleged underpayment is therefore beyond the scope of his second amended complaint.

---

[3] Winder's initial brief and accompanying declaration refer to the payroll system switch as occurring on an unspecified date in "2002." See Pl.'s Opp. at 6; Winder Decl. ¶ 17. But his only testimony describing the factual basis for his claim of being "shortchanged" as a result of the switch is the supplemental declaration filed April 22, 2008, quoted above, which narrows the date down to "late 2001," when he had a meeting with Azumah in his office.

**V.     Prejudgment Interest**

Winder seeks prejudgment interest running from February 2003 on any sums owed to him.  See Pl.'s Notice of Filing Itemization of His Claim of Contract Benefits at 2.  The parties, however, have not further addressed this issue in the summary judgment briefing.  The Court concludes that the matter can nonetheless be resolved without further briefing.  District of Columbia law authorizes an award of prejudgment interest in a breach of contract action "if necessary to fully compensate the plaintiff."[4]  D.C. Code § 15-109; see also Edmund J. Flynn Co. v. LaVay, 431 A.2d 543, 550 n.6 (D.C. 1981).  The award of such interest is within the broad discretion of the trial court.  House of Wines, Inc. v. Sumter, 510 A.2d 492, 499 (D.C. 1986).  Relevant considerations include whether the plaintiff has been deprived of the use of the money withheld, whether he timely commenced suit, and the certainty of the amount due.  See District of Columbia v. Pierce Associates, Inc., 527 A.2d 306, 311 (D.C. 1987); House of Wines, Inc., 510 A.2d at 499.  All of these factors weigh in favor of an award of prejudgment interest in this case:  Winder's salary and unused annual leave was an easily ascertainable sum that the District has offered no basis for withholding, Winder has been deprived of that money for the past five years since the date of his termination, and he commenced suit without undue delay (filing this action roughly eight months after the sum was payable).

The rate for prejudgment interest is set by law at 4 percent per annum.  D.C. Code § 28-3302(b); Pierce Associates, Inc., 527 A.2d at 310-11 (observing that neither § 15-109 nor an analogous interest provision for liquidated debts, § 15-108, specifies the interest rate, and

---

[4] Prejudgment interest is a substantive matter and is thus determined based on the law of the jurisdiction creating the underlying cause of action -- here, District of Columbia law.  See Burlington Ins. Co. v. Okie Dokie, Inc., 398 F. Supp. 2d 147, 158 (D.D.C. 2005); see also Reiman & Co. v. Eromanga Investments, N.V., 622 F. Supp. 13, 21 (D.D.C. 1985).

clarifying "we now hold that the statutory limit on pre-judgment interest expressed in D.C. Code § 28-3302 applies with equal force to both liquidated and unliquidated sums under § 15-108 and -109.").[5]  Therefore, the Court will award prejudgment interest on the sum representing unpaid salary and unused annual leave due Winder -- that is, $8,958.60 -- accruing from April 3, 2003, which is, approximately, the date on which the sum was due.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part defendant's motion for summary judgment on Count IX.  The Court will enter judgment in favor of Winder in the amount of $8,958.60 plus prejudgment interest accruing from April 3, 2003, for the unpaid salary and annual leave.  Judgment will be entered in favor of defendant on all other aspects of Count IX.  A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Date:   May 20, 2008

---

[5] The Court notes that the prime rate is preferred where a federal cause of action is involved.  See Forman v. Korean Air Lines Co., Ltd., 84 F.3d 446, 450-51 (D.C. Cir. 1996) (reviewing award of prejudgment interest in a Warsaw Convention case, and agreeing with the Seventh Circuit that generally "a court should use the prime rate" for prejudgment interest).  But as noted earlier, supra note 4, where the cause of action is a local one, prejudgment interest is determined based on the law of the jurisdiction creating the underlying cause of action.