UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALFRED M. WINDER

    Plaintiff,

    v.

LOUIS ERSTE, et al.,

    Defendants.

Civil Action No. 03-2623 (JDB)

## MEMORANDUM OPINION

Plaintiff Alfred M. Winder is a former employee of the District of Columbia in the Division of Transportation of the D.C. Public Schools ("DCPS"). He brings this action against defendants the District of Columbia and DCPS official Louis Erste. After over seven years of litigation, plaintiff has two remaining claims: breach of contract based on premature termination and deprivation of property without due process. Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff has moved for partial summary judgment pursuant to Rule 56. For the reasons discussed below, the Court will deny both motions.

## BACKGROUND

This case has a long and complex history. In 1999, plaintiff was hired as General Manager of the DCPS Division of Transportation where he oversaw the operation of transportation services for special education students in the District. Pl's Mot. for Partial Summ. J. ("Pl's Mot.") at 3;

Def's Mot. to Dismiss or in the Alt. for Summ. J. ("Def's Mot.") at 4. Plaintiff was brought into DCPS in order to assist the District in complying with the various orders issued in <u>Petties v. Dist. of Columbia</u>, Civil Action No. 95-0148-PLF (D.D.C). He worked for the DCPS under a series of one-year employment contracts between 1999 and 2003. Beginning in May of 2002, both plaintiff and defendants acknowledge that discussions concerning Mr. Winder's title and position at DCPS occurred. <u>See</u> Def's Mot. at 11; Pl's Opp'n at 2. Plaintiff was informed that his position would be abolished, although there is a dispute regarding the timing and rationale. Defendants argue that plaintiff's position was lost due to a reduction in force on May 3, 2002 and that he was not rehired until he entered into the contract at issue on July 22, 2002. Def's Mot. at 11. In contrast, plaintiff asserts that he continued working and that the reduction in force did not affect him because he had already signed his new employment contract. <u>See</u> Pl's Opp'n at 2.

In July of 2002, plaintiff entered into a one-year contract with DCPS for employment as General Manager of Transportation. Pl's Mot. at 3-4; Def's Mot. at 5. During this time, plaintiff's relationship with DCPS intensified over disagreements regarding compliance with the <u>Petties</u> orders, the details of which are discussed at length in this Court's March 2005 opinion. <u>See</u> <u>Winder v. Erste</u>, 2005 WL 736639 (D.D.C. 2005). Ultimately, on April 3, 2003 plaintiff was terminated while on medical leave.

Initially, plaintiff asserted a myriad of claims including violation of his First Amendment rights under 42 U.S.C. § 1983; a claim under the D.C. Comprehensive Merit Personnel Act of 1978, as amended by the Whistleblower Reinforcement Act of 1998; defamation; tortious interference with contract and prospective economic advantage; and claims under the D.C. and federal Family and Medical Leave Acts. In its 2005 decision, this Court granted defendants'

motion to dismiss on several claims, leaving only the First Amendment claims under § 1983 and the D.C. and federal FMLA claims. See id. 2005 WL at *15. In September 2007, this Court granted defendants' motion for summary judgment in its entirety on the remaining claims, with the exception of plaintiff's contract claim for benefits allegedly owed. See Winder v. Erste, 511 F. Supp. 2d 160, 187 (D.D.C. 2007). Finally, in May 2008, this Court awarded plaintiff $8,958.60 plus prejudgment interest accruing from April 3, 2003 for plaintiff's unpaid salary and annual leave. See Winder v. Erste, 555 F. Supp. 2d 103,112 (D.D.C. 2008).

In May 2009, the D.C. Circuit affirmed this Court on all matters, with the exception of plaintiff's premature termination and procedural due process claims. Winder v. Erste, 566 F.3d 209, 219 (D.C.Cir. 2009). Finding that plaintiff was improperly classified as a member of the Executive Service, a position that serves at the pleasure of the Mayor and is considered at-will employment, the court remanded the contract-based claims "because [plaintiff's] employment classification is muddled at best . . . [and] . . . there is a genuine question whether DCPS could terminate him when it did." Id. at 217.

## STANDARD OF REVIEW

**I.     Motion to Dismiss**

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide

the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp.,

16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

## II. Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the

absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

Two claims remain outstanding in this case: premature termination in violation of plaintiff's employment contract and deprivation of property without due process. In order for plaintiff to succeed on his claims, he must show that he was not an employee-at-will and instead was a contract employee with a vested interest in continued employment through the length of his contract. District of Columbia law has long established that "unless a contrary contractual intent is clearly expressed, all employment is at-will." Turner v. Federal Express Corp., 539 F. Supp. 2d 404, 410 (D.D.C. 2008) (citing Green v. Bowne of N.Y. LLC, 2002 U.S. Dist. LEXIS 16872 at *1-2 (D.D.C. Sept. 5, 2002)). Under the at-will employment doctrine, the employment relationship can be terminated by either party for any reason, or no reason, at any time. See Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991); Lance v. United Mine Workers of America 1974 Pension Trust, 355 F. Supp. 2d 358, 360 (D.D.C. 2005).

The parties agree that plaintiff entered into a contract for employment with DCPS for the time period covering July 22, 2002 through July 22, 2003. Pl's Mot. at 3-4; Def's Mot. at 5. Plaintiff relies heavily on the contract language to argue that he could only be fired for cause and that he was not a probationary or at-will employee. Pl's Opp'n at 3; Pl's Mot. at 4-5. However, a contract may still be terminable at will if the circumstances surrounding the making of the

contract support that interpretation.  See Hodge v. Evans Fin. Corp., 707 F.2d 1566, 1569 (D.C.Cir. 1983) (holding that, on the record before the district court, interpretation of a reference to "permanent employment" could be at will or for cause, depending on what additional evidence was presented on remand).  Defendants argue that plaintiff was potentially one of two types of employees that are subject to a mandatory one-year probationary period, removing any "for cause" termination requirement.  See Def's Mot. at 10; Def's Reply at 3-4; Def's Opp'n at 6-8.  Hence, the paramount question is whether plaintiff can be classified as a contract employee with a vested interest in continued employment or whether, instead, he was serving as a probationary employee and subject to the at-will employment doctrine.

Defendants first theory regarding plaintiff's employment classification is that plaintiff served as a probationary employee under D.C. Mun. Regs. tit. 5, § 1307.4 (2000), which requires all employees entering into the Educational Service to "serve a one (1) year probationary period upon initial appointment to a supervisory or managerial position."  The regulation specifies that the probationary period is intended to be used to evaluate the performance of the employee.  Id. at § 1307.5.  Plaintiff responds that this regulation applies only for an "initial" appointment and that he was not subject to a probationary period because he satisfied this requirement when he started with the DCPS in 1999.  Pl's Opp'n at 4.  Defendants counter that because plaintiff was "RIFed" from his prior position, his 2002 appointment qualifies as an "initial appointment to a [different] supervisory or managerial position."  Def's Reply at 3.[1]

---

[1] Another regulation deals with the completion of a probationary period following a promotion: "[A]ny Educational Service member who is promoted to a higher position in the Educational Service prior to completion of the required probationary period in the lower position can satisfy the probationary requirements while serving in the higher position; provided that he or she performs satisfactorily at the higher level, whenever an additional probationary period is required at the higher level." D.C. Mun. Regs. tit. 5, § 1307.9 (2000).

As an alternative theory, defendants offer that plaintiff was a Career Service employee in his probationary period under D.C. Mun. Regs. tit. 5, § 1000.2 (2001) and tit. 6, § 813.2 (2008). They argue that, as an employee whose position included "the major duties . . . of . . . supervision of employees" like "bus drivers, and other drivers involved in the transportation of persons, equipment, materials or inventory," plaintiff can be classified as part of the Career Service. See id. tit. 5, § 1000.1(a), (f) and § 1000.2. According to the regulations, "a person hired to serve under a Career Service Appointment (Probational), including initial appointment with the District government in a supervisory position in the Career Service, shall be required to serve a probationary period of one (1) year." Id. tit. 6, § 813.2. A Career Service employee "who is transferred under this chapter, or promoted, or reassigned under this chapter before he or she completes probation, shall be required to complete the remaining portion of the probationary period in the new position." Id. tit. 6, § 813.6. Furthermore, the regulation specifies that an employee who has completed the probationary period is required to serve an additional probationary period in only three instances: (1) when the employee is appointed as a result of open competition to a position that requires additional "positive educational requirements;" (2) when the new position requires "licensure, certification, or other such requirement, in addition to a positive educational requirement; and (3) when the position is in a "different line of work, as determined by the appropriate personnel authority based on the employee's actual duties and responsibilities." Id. tit. 6, § 813.8.

Ultimately, the resolution of this question of the type of employee that plaintiff was when he was terminated is a mixed question of law and fact. Applying the relevant D.C. Municipal

Regulations to determine plaintiff's employment classification is ultimately a matter of law, but that determination is heavily dependent on several relevant facts that remain at issue in this case. It is unclear, even apparently to the defendants, what type of employment relationship existed between plaintiff and DCPS prior to the 2002 contract and again at the time of his termination on April 3, 2003. Defendants offer two distinct potential employment classifications for plaintiff, but a final determination is dependent on several still outstanding factual questions.

This case is fraught with confusion. Plaintiff's own personnel records listed his job class and pay plan as "EX," a category that is not identified in the Municipal Regulations or D.C. Code. See D.C. Code § 1-610.52(a); D.C. Mun. Regs. tit. 5, § 1102.3-4 (1994); Winder, 566 F.3d at 217. Moreover, even the sections of the D.C. Municipal Regulations on which defendants now rely implicate additional disputed facts. Defendants claim that Winder's position was abolished and his employment with DCPS terminated due to a reduction in force on May 3, 2002, and that he was not hired into his new position until July 22, 2002. Def's Mot. at 11; Def's Ex. 3A (DCPS Department of Human Resources Letter from Director of Human Resources Patricia Watkins Lattimore to Alfred M. Winder, May 3, 2002). But plaintiff points to a subsequent letter that he claims superceded the May 3, 2002 letter and changed the effective termination date under his old position to July 31, 2002, over a week after plaintiff had already begun his new employment contract with DCPS. Pl's Mot. at 2; Def's Ex. 3B (DCPS Department of Human Resources Amended Notice Letter to Alfred M. Winder, June 24, 2002).

While the reduction in force discrepancy presents genuine factual issues, even if plaintiff was not subject to the RIF there is still the question whether he was subject to the one year

probationary status. His employment status at the time of termination is unclear, and his classification prior to the 2002 contract is also in dispute, making it difficult to determine whether the regulations that permit an employee to satisfy his probationary period after a promotion, transfer, or reassignment apply. It is uncertain whether plaintiff was employed in the same status and position throughout his entire history with DCPS or whether each new contract subjected him to a different classification and potentially a new probationary status. Moreover, the details surrounding the DCPS RIF and plaintiff's July 2002 contract are unclear, making a legal determination regarding plaintiff's classification under the relevant D.C. Municipal Regulations difficult. Given that several relevant facts regarding plaintiff's employment status remain in genuine dispute, this Court will deny both parties' motions for summary judgment.[2] The determination of plaintiff's job classification is a mixed question of law and fact, but the outstanding factual issues make summary judgment for either party inappropriate at this time.

## CONCLUSION

Accordingly, the Court will deny plaintiff's motion for partial summary judgment and defendants' motion to dismiss or, in the alternative, for summary judgment with respect to plaintiff's claims for breach of contract and violation of procedural due process. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 7, 2011

---

[2] Because plaintiff's employment classification is still in question, and hence it is unclear whether he had a property interest in continued employment with DCPS, the Court will not reach the merits of plaintiff's procedural due process claim at this time.