UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALFRED M. WINDER

Plaintiff,

v.

LOUIS ERSTE, et al.,

Defendants.

Civil Action No. 03-2623 (JDB)

## MEMORANDUM OPINION

Plaintiff Alfred M. Winder is a former employee of the District of Columbia in the Division of Transportation of the D.C. Public Schools ("DCPS"). He has brought this action against the District of Columbia and DCPS official Louis Erste. The Court previously granted defendant's motion for summary judgment on Winder's procedural due process claims, and granted in part and denied in part the District's motion for summary judgment on Winder's District of Columbia Whistleblower Protection Act ("DC WPA") claims. Based on certain deficiencies in the record, the Court gave the District an opportunity to file a renewed motion for summary judgment on the remnants of Winder's DC WPA claim, which were limited to the following three events: Winder's purported testimony before the D.C. Council; his conversation with Erste relating to the filing of a false affidavit; and his complaint to the Inspector General. The District has now filed that motion. For the reasons discussed below, the Court will grant it in its entirety.

## BACKGROUND

This case has a long and tortured history, which has been set forth more fully in previous opinions. See, e.g., Winder v. Erste, Civ. Action No. 03-2623, 2005 WL 736639, at *1-2 (D.D.C. Mar. 31, 2005); Winder v. Erste, 511 F. Supp. 2d 160, 165-70 (D.D.C. 2007); Winder v. Erste, 566 F.3d 209, 211-13 (D.C. Cir. 2009); Winder v. Erste, 767 F. Supp. 2d 179, 179-80 (D.D.C. 2011); Winder v. Erste, --- F. Supp. 2d ---, 2012 WL 5863494, at *1-4 (D.D.C. Nov. 19, 2012). In short, the case arises from the termination of Winder from his position as transportation manager; in that capacity, he assisted in the District's compliance with the orders issued in Petties v. District of Columbia (D.D.C.) ("Petties orders"), which were designed to address major problems in the way the District managed the transportation of special education students. The only issues left in the case concern three events that constitute Winder's remaining DC WPA claims. Hence, only the relevant facts relating to those claims are set forth here.[1]

Winder purportedly testified about a work stoppage of bus drivers at a meeting of the D.C. Council Committee on Education, Libraries, and Recreation. 2007 Winder Decl. ¶¶ 93-94. He claims that the chair of the hearing, D.C. Council member Kevin Chavous, had been unsatisfied with Erste's and Operating Officer of the Division of Transportation Kennedy Khabo's responses and called Winder to the witness table to answer questions. Pl.'s WPA Stmt.¶ 179 (citing 2007

---

[1] As a preliminary matter, it is appropriate for the Court to consider the record in its entirety, including materials previously submitted by the parties. See, e.g., 10A Wright & Miller, Fed. Prac. & Procedure § 2721 (collecting cases where courts deciding summary judgment motions have considered the entire record, including previously submitted materials unrelated to the motion); see also Stephanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930-33 (1st Cir. 1983) (citing court's obligation to consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" and noting no limitation on the court's examination to "evidence pinpointed in the parties' memoranda") (citing Fed. R. Civ. Proc. 56(c)).

Winder Aff. ¶ 93). After Winder's testimony, Erste "express[ed] opposition and hostility" and Winder heard Erste tell Kevin Walsh, who worked for Special Master Baach, that "I should have fired that motherf****r when I had the chance." Pl.'s WPA Stmt. ¶ 180; 2007 Winder Decl. ¶ 94. On January 28, 2003, the Petties plaintiffs filed a motion to appoint a receiver to bring the Transportation Division into compliance with the Petties orders. Pl.'s WPA Stmt. ¶ 178.

Winder and Erste met on February 3, 2003 to discuss the District's opposition to the motion to appoint a receiver. Pl.'s WPA Stmt. ¶ 182. According to Winder, Erste wanted him to submit a false affidavit stating that all positions within Winder's department had been filled and that the department was fully funded. Id. ¶¶ 182-85; 2013 Winder Decl. ¶¶ 33, 35. He also wanted Winder to state that appointment of a receiver was unnecessary because improvements and progress were being made, and "all issues were on the road to correction." 2013 Winder Decl. ¶ 36. Winder stated that he refused, and appears to claim that Erste and Khabo then submitted those false affidavits. 2013 Winder Decl. ¶¶ 38-39.

On February 24, 2003, Winder filed a formal complaint against Khabo and Erste with the District of Columbia Inspector General. See Pl.'s Ex. E, at 1-4 [ECF No. 94-7]. He alleged, inter alia, that Khabo and defendant Erste had filed false affidavits in the Petties litigation and that Winder was suffering retaliation for telling the truth to the Special Master about departmental problems in meeting the court orders. The Court dismissed most of Winder's WPA claims, but determined that, given Winder's position that his disclosures constituted "one large disclosure" and the incompleteness of the record in light of that stance, the better course would be to give the parties one final opportunity to brief several issues with respect to the WPA claim: whether Winder made protected disclosures through (1) his D.C. Council testimony, (2) his conversation with Erste relating to the filing of a false affidavit, and (3) his complaint to the Inspector General

regarding Erste's and Khabo's purportedly false affidavits, and, if so, whether any of these disclosures was a contributing factor in his termination.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

**DISCUSSION**

A.     Applicable Law

The DC WPA allows District employees to "function as the 'eyes and ears' of District taxpayers," Saint-Jean v. District of Columbia, 846 F. Supp. 2d 247, 260 (D.D.C. 2012) (quoting Williams v. District of Columbia, 9 A.3d 484, 490 (D.C. 2010)), by prohibiting retaliation against employees based on protected disclosures. See D.C. Code § 1-615.51-54. DC WPA claims are analyzed under a burden shifting analytical framework. Coleman v. District of Columbia, --- F. Supp. 2d ---, 2012 WL 4465784, at * 13 (D.D.C. Sept. 28, 2012) (citing Johnson v. District of Columbia, 935 A.2d 1113 (D.C. 2007)). A plaintiff must demonstrate that (1) he made a protected disclosure, (2) his supervisor took or threatened to take a prohibited personnel action against him, and (3) the protected disclosure was a contributing factor to the retaliation or prohibited personnel action. Tabb v. District of Columbia, 605 F. Supp. 2d 89, 98 (D.D.C. 2009) (citing Crawford v. District of Columbia, 891 A.2d 216, 218-19 (D.C. 2006)). The plaintiff carries the initial burden of establishing these elements. Coleman, 2012 WL 4465784, at *13. The burden then shifts to the defendant to show "by clear and convincing evidence" that the adverse employment action would have taken place even if plaintiff had not engaged in protected activity. Id. (citing Crawford, 891 A.2d at 218). Finally, plaintiff has the burden of showing that the explanation is pretext. Id. Accordingly, "[l]iability under the [DC WPA] is measured under a 'but for' analysis." Johnson, 935 A.2d at 1119 (quoting Crawford, 891 A.2d at 222).

Under the version of the DC WPA applicable to the 2003 events at issue,[2] "protected

---

[2] This Court previously ruled that the definition of "protected disclosure" from the DC WPA, as amended by the Whistleblower Protection Amendment Act of 2009, did not apply to the 2003 events at issue. See Winder, 2012 WL 5863494, at *10.

disclosure" means any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes is evidence of: (A) gross mismanagement; (B) gross misuse or waste of public resources or funds; (C) abuse of authority in connection with the administration of a public program or the execution of a public contract; (D) a violation of law, or a contract term between the District and a government contractor which is not of a merely technical or minimal nature; or (E) a substantial and specific danger to the public health and safety.  D.C. Code § 1-615.52(6).  Importantly, whether a disclosure is eligible for protection under the DCWPA "hinges not upon whether the [conduct disclosed] was ultimately determined to be illegal, but whether [the declarant] reasonably believed it was illegal."  Freeman v. District of Columbia, --- A.3d ---, 2012 WL 5513544, at *5 (D.C. 2012) (internal citations and quotations omitted).  The DC WPA does not define "reasonable belief," but the D.C. Court of Appeals has defined it as whether "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government" constituted evidence of one of the above five statutory conditions.  Zirkle v. District of Columbia, 830 A.2d 1250, 1259-60 (D.C. 2003) (citing Lachance v. White, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

Assuming Winder can demonstrate that his alleged disclosures were protected under the DC WPA, he must also show by a preponderance of the evidence that they were a contributing factor to his termination.  D.C. Code § 1-615.54(b).  A "contributing factor" is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." D.C. Code § 1-615.52(a)(2).

### B.      D.C. City Council Testimony

Winder indicates that he began complaining about inaccurate payroll and leave records as early as 2001, Sec. Am. Compl. ¶ 46, and that inaccurate payroll and leave records remained a constant problem.  2011 Winder Dep. 198-207.  As this Court previously observed, these were not new communications in 2003, and they are not protected under the DC WPA.  Winder, 2012 WL 5863494, at *15.  But these payroll and leave problems, which were already known, did lead to a work stoppage in mid-January 2003.  As a result of the work stoppage, between thirty-five and forty percent of drivers were absent from work, impacting thirty to forty percent of the Petties class members for two days.  The Special Master attempted to convene an emergency meeting over the weekend to address the issue, but no one from DCPS could attend.  Id. ¶¶ 175-78.

After the walkout, Winder claims that Erste and Khabo testified before the D.C. City Council.  He further claims that he was called to the witness table to answer questions.  Pl.'s WPA Stmt.¶ 179 (citing 2007 Winder Decl. ¶ 93).  The District asserts that no such hearing and no such testimony ever took place.  It points to the lack of any corroborating information provided by Winder, other than his own affidavits, that he ever gave any testimony.  It also submits that there are no records indicating that Winder ever testified before the D.C. Council, and provides a declaration to that effect from the Secretary of the Council, who is responsible for keeping records of D.C. Council hearings and testimony.  See Def.'s Ex. 1, Declaration of Nyasha Smith ¶ 1 (Feb. 4, 2013) [ECF No. 208].  The District conducted a search of its records for the relevant time period asserted by Winder, and no record was found indicating that a relevant hearing or roundtable had been held, or that Winder had ever testified.  Id. ¶¶ 7-8.

Nonetheless, Winder maintains in a detailed affidavit that a hearing was held.  He states

that the hearing was not regularly scheduled, but was called in response to the work stoppage. Pl.'s Ex. A, Decl. of Alfred M. Winder ¶ 6 (Mar. 4, 2013) [ECF No. 210-1] ("2013 Winder Decl."). He further claims that this hearing was not recorded. Id. ¶¶ 8-10. Winder states that the hearing lasted for approximately four hours, and that his testimony lasted between 15 and 30 minutes. Id. ¶ 12. He also states that the hearing was chaired by D.C. Councilmember Kevin Chavous, and was attended by other councilmembers, DCPS Board Chair Peggy Cafritz, Vice Chair William Lockridge, Kevin Walsh from Special Master Baach's staff, representatives from the two unions for bus drivers, and parents. Id. ¶¶ 5, 14. Still, Winder points to no corroborating evidence that the hearing took place, despite the purported attendance of all these individuals.

At this stage, this discrepancy between the parties as to whether a hearing even took place, given the numerous depositions conducted and the other discovery performed in this decade-old case, is simply astonishing. However, Winder bears the burden of establishing the basis for a DC WPA claim, and he offers no additional information or evidence that the D.C. Council testimony took place beyond his own affidavit, despite the many attendees he states were present at the hearing. For example, no affidavit or other corroboration from another attending individual is provided. Without more, Winder's claim, supported only by his own self-serving affidavit and undermined by the declaration of the Secretary of the Council, cannot survive summary judgment. See Carranza v. Fras, 820 F. Supp. 2d 118, 124 (D.D.C. 2011) (plaintiff's "lone affidavit" insufficient to withstand summary judgment when unsupported by corroborating evidence and undermined by other credible evidence); see also Booth v. District of Columbia, 701 F. Supp. 2d 73, 82 (D.D.C. 2010).

Even when the facts are construed in Winder's favor, and assuming that the D.C. Council

testimony took place as he describes, Winder nevertheless fails to describe any disclosures he made that would constitute a "protected disclosure" under the DC WPA. He contends that he testified that the strike occurred because bus drivers did not receive checks for accrued vacation pay, and that the DCPS failed to implement an accurate payroll system. 2013 Winder Decl. ¶¶ 18-19. Winder also claims he told councilmembers about driver recruitment problems and issues relating to unpaid parking tickets. Id. ¶¶ 25-30. But as this Court already noted in a prior Memorandum Opinion, Winder's complaints about inaccurate payroll and leave records began as early as 2001, Sec. Am. Compl. ¶ 46, and he had already disclosed that inaccurate payroll and leave records remained a constant problem, 2011 Winder Dep. 198-207; these were not new communications in 2003, and hence they are not protected under the DC WPA. See Winder, 2012 WL 5863494, at *15. Special Master Baach's Report and Recommendation from 2001, referenced by Winder, also indicates that issues regarding recruitment, leave usage, and inaccurate payroll and leave records had been a problem since 2000. See generally Pl.'s Ex. E (Feb. 20, 2001) [ECF No. 210-5]. Moreover, the Washington Times article cited by Winder indicates that the inaccurate payrolls were publicly known and a continuous problem over "the last two years." See Pl.'s Ex. C (Jan. 22, 2003) [ECF No. 210-3].

Without more, the Court cannot find that Winder has met his burden to establish that he made "protected disclosures" during his claimed testimony before the D.C. City Council because the information Winder "disclosed" appears to have already been known.[3] See Meuwissen v.

---

[3] Even if the content of Winder's purported testimony before the D.C. Council addressed issues not previously disclosed or already known, it would still not be protected under the DC WPA because Winder has offered no evidence, other than his self-serving affidavit, to establish the nature of his disclosures as protected. See Bowyer v. District of Columbia, --- F. Supp. 2d ---,

Dep't of Interior, 234 F.3d 9, 13 (Fed.Cir. 2000) (statements by ALJ regarding previously released opinions were not protected disclosures "because the Agency's alleged misconduct was not concealed and was already known").  Moreover, Winder's statement attributing the blame to Erste is not the kind of disclosure protected by the DC WPA.  See, e.g., Lachance v. White, 174 F.3d 1378, 1381 (Fed. Cir. 1999) ("A purely subjective perspective of an employee is not sufficient [to make out a WPA claim] even if shared by other employees.  The WPA is not a weapon in arguments over policy or a shield for insubordinate conduct.").

This Court, in allowing the parties one final opportunity to brief this issue given the incompleteness of the record, noted that "[u]ltimately, it may be that Winder's testimony divulged no new information, or his testimony consisted of information that would be unprotected by the DC WPA."  Winder, 2012 WL 5863493 at *17.  That proves to be the case.  Accordingly, the Court concludes that Winder has failed to demonstrate that there is a genuine issue of disputed fact as to whether he made a protected disclosure at a D.C. Council meeting, and summary judgment on this issue should be granted to the District.

### C.   False Affidavit and Complaint to Inspector General

Winder claims that during a meeting on February 3, 2003, Erste wanted him to submit a false affidavit in support of the District's opposition to the motion to appoint a receiver in the Petties litigation.  According to Winder, Erste instructed him on what he should say if he was

---

2012 WL 6622618, at *17 (D.D.C. December 20, 2012) (self-serving and uncorroborated deposition testimony insufficient to establish the nature of disclosure as protected); see also Wilburn v. District of Columbia, 957 A.2d 921, 925 (D.C. 2008) ("[t]he basis for determining the nature of ... charges" that a putative whistleblower had made "are the statements ... in [his] complaint" to a supervisor or to a public body, "not [his] subsequent characterization of those statements" in litigation) (citations omitted).

called to testify or give an affidavit in conjunction with the motion for appointment of a receiver. 2013 Winder Decl. ¶ 32. Erste wanted Winder to testify that the transportation department was fully funded, that staffing was adequate, and that a receiver was unnecessary because there had been substantial improvement in the Department. See Pl.'s Ans. to Def.'s Interrogatories at 10; 2013 Winder Decl. ¶¶ 33-36. Winder refused to do so. Pl.'s WPA Stmt. ¶¶ 182-85. Winder states that he never provided an affidavit for the opposition to the motion to appoint a receiver, and did not testify in the receivership proceedings because he had been terminated. 2013 Winder Decl. ¶ 37. On February 10, 2003, the District filed its opposition to the receiver motion, including declarations from Erste and Khabo, which Winder claims (in particular, with respect to Erste's affidavit) contained false information. Id. ¶¶ 39-52. Two weeks later, Winder filed a complaint with the D.C. Inspector General against Erste and Khabo. See Pl.'s Ex. E at 1-4 [ECF No. 94-7]. That complaint asserted that Erste and Khabo had filed false affidavits regarding the District's Petties compliance, and sought an investigation into the same complaints that Winder had previously made. Id.; Pl.'s WPA Stmt. ¶ 192.

As this Court stated previously, Winder's allegation that he told Erste he refused to file a false affidavit, coupled with his complaint to the Inspector General disclosing the filing of the allegedly false affidavits by Erste and Khabo, might, under certain circumstances, be serious enough to constitute a "protected disclosure" under the DC WPA. Winder, 2012 WL 5863494 at *17. But at that time the Court was unable to determine whether summary judgment was warranted based on the incomplete record before it, in part because no party had provided the complete affidavits authored by Khabo and Erste as part of the record. See id. at *17 nn. 10 & 19.

These affidavits have now been provided. The District argues that Winder's statement to Erste that Erste wanted a false affidavit was not a protected disclosure because Winder's statement failed actually to disclose anything. It argues that because the statement about the purported wrongdoing was made to the alleged wrongdoer, it was not a disclosure, and, therefore, not information protected by the DC WPA. Def.'s Mot. at 5-6. The District also contends that Winder's subjective opinions about the affidavits cannot constitute a protected disclosure. Id. at 6-9. The Court agrees.

As a preliminary matter, the distinction drawn by Winder between the DC WPA and the federal WPA with respect to conduct covered under the statutes is unavailing here. Winder claims that the statement he made to Erste about Erste is actionable under the DC WPA because the DC WPA is broader in scope than the federal WPA with respect to disclosures made to supervisors. However, the Court finds nothing in the language of the DC WPA to support Winder's contention. The definition of a protected disclosure in the DC WPA, which includes a disclosure made "to a supervisor or a public body," does not support including statements made about a supervisor to that same supervisor, since the belief that the information conveyed is the kind of information protected by the DC WPA must still satisfy a requirement of reasonableness. See D.C. Code § 1-615.52(6). The excerpts from the legislative history attached by Winder provide no additional support for his contention that the DC WPA is broader than the federal WPA in this regard so as to include the conduct Winder complained of here. Indeed, the legislative history focuses on the supervisor's role to report wrongdoing and to take remedial action when disclosures have been made to him; it does not support Winder's interpretation that his accusations about Erste to Erste are incorporated into the DC WPA. See Council of the District of Columbia Report: Bill 12-191, "The District of Columbia Whistleblower Protection Act of 1998" at 3-4 (April 28, 1998) [ECF

No. 212-1]. In short, there is no support for interpreting the DC WPA as having a broader standard for what constitutes a protected disclosure, so as to qualify Winder's statement to Erste about Erste as a protected disclosure.

Moreover, Winder did not disclose to Erste what he reasonably believed constituted gross mismanagement, unlawful activity, or other types of disclosures the DC WPA was intended to protect. Instead, Winder's grievances are in the nature of subjective opinion and policy disagreements. For example, Winder claims that his grievance with Erste's and Khabo's affidavits was that they "painted too rosy a picture of the DCPS' progress and improvements." Pl.'s Opp'n at 8 (citing 2013 Winder Decl. ¶¶ 38-53). He points to the following statements in Erste's affidavit as evidence of their fraudulence: "[b]y closely working with the Division's staff, Khabo has accomplished in the past six months what could not be accomplished over the past two and a half years" and "[s]ince the timekeeping function was moved . . . almost all of these concerns [i.e., incorrect paychecks] have been rectified and there are few remaining significant issues with employee timekeeping or paychecks." Def.'s Ex. 3, Decl. of Louis Erste ¶¶ 12, 21 (Feb. 10, 2003) [ECF No. 208-3]. It is apparent that Winder took issue with Erste's characterization of the progress that has been made in complying with the Petties orders,[4] but his disagreement with Erste's subjective description of these compliance efforts does not constitute a protected

---

[4] It should be noted that Winder's OIG complaint states that Erste and Kabo filed false affidavits in that they "testified that no real improvements have occurred with [the] Division of Transportation[,] which cannot be substantiated by the official records." Pl.'s Ex. E, at 1 [ECF No. 94-7]. This claim that Erste and Khabo were not generous enough with their depiction of DCPS progress stands in stark contrast to Winder's claims in litigation that Erste and Khabo "painted too rosy a picture of DCPS' progress and improvements." Pl.'s Opp'n at 8 (citing 2013 Winder Decl. ¶¶ 38-53).

disclosure.[5]  See, e.g., Lachance, 174 F.3d at 1381.  In short, Winder could not have reasonably believed that his opinion of these descriptions is the type of disclosure protected under the DC WPA.  See Williams, 9 A.3d at 490-91; Zirkle, 830 A.2d at 1259-60 (citing Lachance, 174 F.3d at 1381).

Correspondingly, Winder's DC WPA claim premised on his complaint to the Inspector General regarding the filing of purportedly false affidavits also fails.  There is no genuine issue of fact over whether Erste knew about Winder's filing of the OIG complaint, or whether the complaint was a contributing factor in his termination.  Although Winder spends much time discussing the District's lack of "clear and convincing" evidence that the termination of Winder would have taken place despite Winder's complaints about compliance with the Petties orders, he glosses over the requirement that he must first demonstrate that he satisfies the elements of a DC WPA claim.  See Coleman, 2012 WL at * 13 (citing Crawford, 891 A.2d at 218) (noting plaintiff has the initial burden of establishing elements of DC WPA claim, and only afterward does the burden shift to the defendant to show "by clear and convincing evidence" that the adverse employment action would have taken place even if plaintiff had not engaged in protected activity).  Winder also makes these arguments generally, rather than with respect to the narrowed events focused by the Court in its last Memorandum Opinion.  Ultimately, however, what most dooms Winder's remaining DC WPA claims is that none of the information he claims he "disclosed" constitutes "protected disclosures" within the DC WPA.  Given the Court's conclusion that Winder has failed to demonstrate a genuine issue of disputed fact that he made protected

---

[5] Winder primarily focuses on Erste's characterization of events in the affidavit, rather than the contents of Khabo's affidavit.  However, he appears to take issue with what he views as both Erste's and Khabo's overly optimistic assessments of DCPS compliance and progress in making improvements pursuant to the Petties orders.

disclosures either at the D.C. Council hearing, to Erste about the false affidavits, or to the OIG regarding those same affidavits, summary judgment will be granted to the District on Winder's remaining DC WPA claims.

## CONCLUSION

For the reasons explained above, the Court will grant the District's motion for summary judgment on Winder's remaining DC WPA claims. A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: March 29, 2013