UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALFRED M. WINDER,

    Plaintiff,

        v.

LOUIS ERSTE, et al.,

    Defendants.

Civil Action No. 03-2623 (JDB)

## MEMORANDUM OPINION

Plaintiff Alfred M. Winder is a former employee of the District of Columbia's Division of Transportation of the D.C. Public Schools ("DCPS"). He brought this action against defendants the District of Columbia and DCPS official Louis Erste (collectively "the District"). After over a decade of litigation, Winder has one remaining claim: breach of contract based on premature termination. The District has [227] moved for summary judgment under Federal Rule of Civil Procedure 56, arguing that Winder does not have an enforceable contract with DCPS. Winder has [230] moved to strike part of the District's argument and its supporting evidence relating to whether Winder was a member of the Executive Service and therefore employed at-will. Upon consideration of the two motions and the parties' memoranda,[1] the applicable law, and the entire record, and for the reasons set forth below, the Court will grant the District's motion for summary judgment and will deny as moot Winder's motion to strike.

## BACKGROUND

This case has a lengthy and complicated history, which has been set forth in several previous opinions. See, e.g., Winder v. Erste, 934 F. Supp. 2d 109 (D.D.C. 2013); Winder v.

---

[1] Defs.' Mot. for Summ. J. [ECF No. 227] ("Defs.' Mot."); Pl.'s Opp'n to Defs.' Mot. [ECF No. 229] ("Pl.'s Opp'n"); Defs.' Reply to Pl.'s Opp'n [ECF No. 232] ("Defs.' Reply"); Pl.'s Mot. to Strike [ECF No. 230]; Defs.' Opp'n to Pl.'s Mot. to Strike [ECF No. 233]; Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. to Strike [ECF No. 234].

1

Erste, 905 F. Supp. 2d 19 (D.D.C. 2012); Winder v. Erste, 767 F. Supp. 2d 179 (D.D.C. 2011); Winder v. Erste, 566 F.3d 209 (D.C. Cir. 2009); Winder v. Erste, 511 F. Supp. 2d 160 (D.D.C. 2007); Winder v. Erste, Civ. Action No. 03-2623, 2005 WL 736639 (D.D.C. Mar. 31, 2005). Now, Winder's sole remaining claim is that the District breached a one-year employment contract with him when it terminated him after less than a year. The relevant, undisputed facts follow.

In 1999, DCPS hired Winder as a general manager, overseeing the operation of transportation services for special education students in the District. 905 F. Supp. 2d at 24. Winder was hired to assist the District in complying with the various orders issued in Petties v. District of Columbia, Civ. Action No. 95-0148-PLF (D.D.C.). Id. In May 2002, Winder was informed that his position would be abolished. Id. Around this time, DCPS issued a vacancy announcement for the position of "General Manager" in the Office of Transportation. Defs.' Stmt. of Undisputed Facts [ECF No. 227] ¶ 3. The vacancy announcement stated that "Appointees to this position serve at the pleasure of the appointing authority." Ex. 2 to Defs.' Mot., General Manager Vacancy Announcement [ECF No. 227-2]. Winder applied for the position, which had substantially similar responsibilities to his former position, and was selected. 905 F. Supp. 2d at 24. In July 2002, he received a hiring letter purporting to confirm a one-year contract between Winder and DCPS for Winder's employment as General Manager. Ex. 1 to Def.'s Mot., July 17, 2002 Letter from Erste to Winder [ECF No. 227-1]. The letter states in relevant part:

> 13. DCPS agrees to and does hereby employ you as its General Manager of Transportation commencing on July 22, 2002, with continued service in the position contingent on the final results of your background check.
>
> 14. Your annual salary will be $103,530.

15. Salary reviews will be based upon your achievement of previously established objectives and your performance. Your salary will be reviewed annually. The tenure of this contract is one year from the commencement date.

16. You shall be entitled to the full range of fringe benefits including a health care benefit plan; disability and life insurance; and an employer paid pension plan with a contribution by DCPS of 7% of total compensation. Sick and annual leave will be provided according to DCPS's policies and guidelines.

17. The Chief Operating Officer shall review this Agreement with the Employee annually, and shall, no less than thirty (30) days prior to the expiration of this Agreement or any renewal hereof, take official action determining whether or not it is extended for an additional year or other mutually agreed upon period of time, and notify Employee of such action in writing.

18. The Chief Operating Officer shall evaluate Employee's performance at least once each Agreement year, using criteria, performance objectives and goals, and an evaluation process adopted by DCPS for Employee's position, and which is communicated to Employee no more than ninety (90) days after this Agreement is signed.

Id. at 1-2. The letter was signed by Winder and by Louis Erste, the Chief Operating Officer of DCPS. Id.

Shortly after beginning work in this new position, Winder's relationship with DCPS deteriorated. See 2005 WL 736639, at *2 (D.D.C. 2005). Ultimately, on April 3, 2003—less than a year after he was hired—Winder was terminated while on medical leave. 905 F. Supp. 2d at 26. The following day, Winder filed a petition for appeal of his termination with the D.C. Office of Employee Appeals ("OEA"). 511 F. Supp. 2d at 169. OEA held that Winder was a probationary employee and that therefore he had no right of appeal to OEA. Id.

In late December 2003, Winder brought suit in this Court. See Compl. [ECF No. 1]. His amended complaint, filed in February 2004, asserted a violation of his First Amendment rights under 42 U.S.C. § 1983; a claim under the D.C. Comprehensive Merit Personnel Act of 1978, as amended by the Whistleblower Reinforcement Act of 1998; defamation; tortious interference with contract and prospective economic advantage; and claims under the D.C. and federal

3

Family and Medical Leave Acts. See Am. Compl. [ECF No. 3]. In late 2005, Winder amended his complaint for a second time to include a claim for breach of written employment contract, in addition to other claims. See Mot. for Leave to File 2d Am. Compl. [ECF No. 59]; 2d Am. Compl. [ECF No. 63]. After several rounds of motions practice, this Court granted summary judgment for the District on the remaining claims,[2] with the exception of Winder's claim for lost benefits. See 511 F. Supp. 2d at 187. Regarding Winder's breach of contract claim, the Court found that Winder was not a contract employee with a vested interest in continued employment through the length of his contract because "[t]he evidence submitted by defendants and plaintiff is that plaintiff was employed . . . in the Executive Service . . . and thus [he] signed the [employment] contract with knowledge that he served at the pleasure of the appointing authority." Id. 178-79. In May 2008, the Court resolved the final outstanding issue of lost benefits and awarded Winder $8,958.60, plus prejudgment interest accruing from April 3, 2003, for Winder's unpaid salary and annual leave. See Winder v. District of Columbia, 555 F. Supp. 2d 103, 112 (D.D.C. 2008).

On appeal, the D.C. Circuit affirmed this Court on all matters, except Winder's breach of contract claim and his related procedural due process claim. See 566 F.3d at 219. Finding that Winder was improperly classified as a member of the Executive Service, the D.C. Circuit remanded the contract-based claims "because [Winder's] employment classification is muddled at best . . . [and] . . . there is a genuine question whether DCPS could terminate him when it did." Id. at 217.

---

[2] The claims for relief that were pending at the time were "those alleging that [Winder] was subject to a hostile work environment and terminated in violation of the First Amendment and 42 U.S.C. § 1983 (Counts I and V); that he was terminated in retaliation for taking medical leave, in violation of the federal and D.C. Family and Medical Leave Acts (Count III); that he was terminated in breach of a written employment contract and also lost benefits promised under the contract (Count IX); that he was deprived of his property interest in employment in violation of his right to procedural due process (Count X); that he was deprived of his liberty interest in pursuing employment opportunities in his chosen profession without a name-clearing hearing (Count XI); and that he was deprived of substantive due process (Count XII)." 511 F. Supp. 2d at 170.

After several subsequent decisions by this Court granting summary judgment in favor of the District on Winder's procedural due process claim and reinstated Whistleblower Protection Act claims,[3] Winder's sole remaining claim is whether the District breached a written employment contract by terminating him when it did. The District has moved for summary judgment on that claim, arguing that the purported contract signed by Erste and Winder is unenforceable because Erste lacked authority to enter into a contract on behalf of DCPS, and because Winder was hired into either the Career Service or the Executive Service and thus was an at-will employee. Winder opposes the District's motion and moves to strike the District's argument that Winder was in the Executive Service. Because the Court finds that Erste lacked the authority to enter into a contract on behalf of DCPS and that Winder's purported employment contract is therefore unenforceable, summary judgment will be granted in favor of the District. The Court need not consider the District's argument that Winder was hired into either the Career Service or the Executive Service. Hence, Winder's motion to strike the District's Executive Service argument will be denied as moot.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The party seeking summary judgment bears the initial responsibility of demonstrating the absence of

---

[3] See 767 F. Supp. 2d 179 (denying both the District's motion to dismiss or for summary judgment and Winder's motion for partial summary judgment on the breach of contract and violation of procedural due process claims); 905 F. Supp. 2d 19 (granting summary judgment for the District on the procedural due process claim and part of the reinstated D.C. Whistleblower Protection Act ("WPA") claims); 934 F. Supp. 2d 109 (granting summary judgment for the District on the remaining DC WPA claims).

5

a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson, 477 U.S. at 255.  The non-moving party must, however, establish more than the "mere existence of a scintilla of evidence" in support of its position, id. at 252, and may not rely solely on allegations or conclusory statements, Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999).  Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## **DISCUSSION**

Winder's only remaining claim is that the District "breached the Written Employment Contract by terminating Winder's employment prior to the expiration of the contract." 2d Am. Compl. ¶ 127.  The District argues that Winder did not have an enforceable employment contract.

District of Columbia law has long established that, "unless a contrary contractual intent is clearly expressed, all employment is at-will." Turner v. Federal Express Corp., 539 F. Supp. 2d

6

404, 410 (D.D.C. 2008) (internal quotation marks and citation omitted); see also Reaves-Bey v. Karr, 840 A.2d 701, 704 (D.C. 2004). Under the at-will employment doctrine, the employment relationship can be terminated by either party for any reason, or no reason, at any time. See Reaves-Bey, 840 A.2d at 704; Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991). The presumption of at-will employment applies "unless the parties state clearly their intention to limit the employer's right to terminate, such as by a contract provision setting out employment for a fixed term or language that allows termination only for cause." Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 67-68 (D.D.C. 2005) (citations and internal quotation marks omitted); see also Simard v. Resolution Trust Corp., 639 A.2d 540, 551 (D.C. 1994). Importantly, however, "[i]t is a basic principle of District law that a contracting official cannot obligate the District to a contract in excess of his or her actual authority." District of Columbia v. Greene, 806 A.2d 216, 222 (D.C. 2002); see also District of Columbia v. Brookstowne Cmty. Dev. Co., 987 A.2d 442, 446 (D.C. 2010) ("A contract is void or voidable if one of the parties lacked the capacity to enter into it. . . . For government agencies, the extent of the capacity to contract is determined by the scope of their statutorily granted authority."). "Likewise, a person making or seeking to make a contract with the District is charged with knowledge of the limits of the agency's (or its agent's) actual authority." Greene, 806 A.2d at 222; see also Leonard v. District of Columbia, 801 A.2d 82, 86 (D.C. 2002) (party attempting to contract with D.C. government is "on constructive notice of the limits of the [government agent's] authority" and contracting party's "claim of reasonable reliance is unavailing").

Here, the parties agree that Winder received a letter, dated July 17, 2002, from Erste confirming Winder's hire. This letter is signed by both Erste and Winder and states that Winder's employment commences on July 22, 2002, that "the term of this contract is one year from the

7

commencement date," and that the Chief Operating Officer will determine whether this "Agreement with Employee" shall be "extended for an additional year or other mutually agreed upon period of time." July 17, 2002 Letter from Erste to Winder. Winder relies on this contract language to argue that he could not be fired before the conclusion of a one-year term.

The District, on the other hand, contends that the purported employment contract is unenforceable because Erste lacked authority to sign a contract on behalf of DCPS. According to section 3700 of the District of Columbia Municipal Regulations, only the Superintendent of Schools has the authority on behalf of DCPS to enter into contracts for services, and only he may delegate that authority to specific subordinate officials in writing. See D.C. Mun. Reg. tit. 5-E, § 3700 et seq. The relevant excerpts of the District of Columbia Municipal Code follow:

> "[T]he Superintendent of Schools . . . is delegated all authority to further the needs and interests of the school system by entering into procurement contracts and negotiated services agreements, subject to the provisions of this chapter." D.C. Mun. Reg. tit. 5-E, § 3700.2.
>
> "The Superintendent may redelegate in writing to subordinate officials of the school system authority vested in him or her by this chapter." Id. § 3700.3.
>
> "Any redelegation by the Superintendent shall specifically identify the individual or individuals authorized, as contracting officers, to execute awards and to approve determinations and findings, consistent with this chapter, and to sanction procurement of supplies and services." Id. § 3700.4.
>
> "The school system shall not generally be bound by agreements or contracts made to prospective contractors by persons to whom procurement authority has not been delegated or who are lacking the approval(s) required by this section." Id. § 3702.2.
>
> "All negotiated contracts shall be reviewed by and receive the written approval of a contract review committee, whose membership shall be designated by the Superintendent of Schools." Id. § 3702.5.

The District contends that then-Superintendent Paul Vance never delegated contracting authority to Erste. Therefore, the District argues, Erste did not have authority to enter into a contract on

8

behalf of DCPS with Winder, and "thus [Winder] does not have an enforceable contract." Defs.' Mot. at 5.

Winder responds that the contract is enforceable because Vance gave Erste "the authority to hire and fire." Pl.'s Opp'n at 3, 6; see also Ex. A to Pl.'s Opp'n, Deposition of Paul L. Vance, Sr. [ECF No. 229-3] 18:4-8. The authority to hire and fire, however, does not necessarily include the authority to enter into contracts. See, e.g., Porshin v. Snider, 212 N.E.2d 216, 217 (Mass. 1965) ("The mere fact that he was general manager . . . with authority to hire and fire, cannot be said to clothe him with ostensible authority to make a contract for permanent employment."); Alderfer v. Bd. of Trs. of Edwards Cnty. Hosp. & Healthcare Ctr., 261 F. App'x 147, 150-53 (10th Cir. 2008) (explaining that the authority "to appoint" someone to a position and "to remove" that person from that position does not include the authority to "enter into a fixed-term employment contract"). As the District points out, "essentially every position in District government is subject to someone's 'hiring and firing' authority, yet that authority does not confer upon the thousands of District supervisors the ability to enter into employment contracts." Defs.' Reply at 3. And here, although Vance gave Erste authority to hire and fire, there is no evidence that Vance gave Erste the authority to enter into contracts on behalf of DCPS. Without contracting authority, Erste could not enter into an enforceable employment contract with Winder on DCPS's behalf. See, e.g., Orange v. District of Columbia, 59 F.3d 1267, 1270-71 (D.C. Cir. 1995) (finding employment contracts to be unenforceable where District official lacked authority to include certain provisions in the contracts). Moreover, even if Vance had orally delegated contracting authority to Erste (which is not the case here), that delegation would not have been proper because it was not in writing. See D.C. Mun. Reg. tit. 5-E, § 3700.3 ("The Superintendent may redelegate in writing to subordinate officials of the school system

authority vested in him or her by this chapter."). And even if Vance had properly delegated contracting authority to Erste (which is also not the case here), Erste would have needed to follow the relevant regulations that require all negotiated contracts to be "reviewed by and receive the written approval of a contract review committee." Id. § 3702.5. Nothing indicates that Winder's purported employment contract was ever reviewed or approved by a contract review committee. Under the governing provisions of section 3700 et seq., then, Winder's purported contract with DCPS is unenforceable.

Winder next argues that these provisions apply only to procurement contracts, not to "[a]n employment contract paying a salary and granting fringe benefits," i.e., his purported employment contract. Pl.'s Opp'n at 6. This argument is unavailing. Section 3700 et seq. contains the "General Provisions" and related content of Chapter 5-E37, titled "Procurement and Negotiated Services Contracts," which governs contractors who enter service agreements with the District. See D.C. Mun. Reg. tit. 5-E, § 3700. If Winder had an employment contract with the District—which is the crux of his breach of contract claim—then he is a contractor with a service agreement, and thus subject to these regulations. If, on the other hand, Winder's employment is not governed by section 3700 et seq., then he is not a contractor and thus is employed at-will because "all of the employee specific regulations explicitly state that DCPS employees are part of various career services, and are not hired under services contracts." Defs.' Reply at 6. Winder may not rest on his conclusory statement that section 3700 et seq. simply "do[es] not apply" to his contract, Pl.'s Opp'n at 6, and thereby avoid summary judgment. See Greene, 164 F.3d at 675. He fails to proffer any other argument that section 3700 et seq. does not apply to him as a purported contractor or that other regulations instead govern his

employment. There is no genuine dispute of material fact, then, that if Winder had a contract with DCPS, it would be governed by section 3700 et seq.

Winder presents two other arguments why the Court should not find that his purported contract with DCPS is unenforceable. He first contends that "the Court should deny the District's motion and strike the . . . defense that Erste lacked the authority to enter into a written employment contract with Winder on the ground that [the] District never preserved any such defense in its Answer."[4] Pl.'s Opp'n at 4. The District, however, properly executed its obligations under Federal Rule of Civil Procedure 8. It included in "short and plain terms its defenses to each claim asserted against it," Fed. R. Civ. P. 8(b), including defenses to Winder's breach of contract claim. In its answer, the District "denies that [the letter signed by Erste and Winder] created a binding employment contract," and states that "[Winder] was employed as a managerial or supervisory 'at will' employee who served at the pleasure of the appointing authority" and that Winder's breach of contract claim "fails to state a claim upon which relief can be granted." Defs.' Supp. Answer Responding to Count IX of the 2d Am. Compl. ¶ 124, Aff. Defenses ¶¶ 1-4 [ECF No. 87].

The District's statements unambiguously convey that it denied the existence of an enforceable contract, adequately putting Winder on notice of the District's defense to his claim. See Daingerfield Island Protective Soc'y v. Babbitt, 40 F.3d 442, 444 (D.C. Cir. 1994) (explaining that the purpose of requiring defenses to be pled in an answer is "to put opposing parties on notice of affirmative defenses and to afford them the opportunity to respond to the defenses") (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 350 (1971)). Moreover, the District's more specific argument that Winder's contract is unenforceable because

---

[4] The District failed to address Winder's argument on this point—its reply contains only the following phrase that abruptly cuts off: "Plaintiff also argues that the District is precluded from arguing that Mr. Erste lacked [. . .]." Defs.' Reply at 5 n.1.

11

Erste lacked the authority to enter into it was raised at least as early as 2011, and Winder did not object to it then. See Defs.' 2d Mot. for Summ. J. at 10-13 [ECF No. 131] (noting that a contracting officer "cannot obligate the District to a contract in excess of his or her actual authority"; that "a person making or seeking to contract with a municipal corporation is charged or imputed with knowledge of the scope of the agency's authority"; and that "Erste could not obligate the District in excess of his actual authority"); see also Pl.'s Opp'n to Defs.' 2d Mot. for Summ. J. [ECF No. 137] (failing to argue that the District had waived its ability to assert this defense). Winder has therefore waived his objection. See, e.g., Mittleman v. United States, 997 F. Supp. 1, 6 (D.D.C. 1998) (explaining that plaintiff's objection to defendant's defense allegedly not in answer may be waived where defense had already been litigated without objection by plaintiff). Accordingly, the Court will not strike the District's defense argument.

Winder also argues that the District engaged in "misconduct" if Erste acted without actual authority to enter into a contract with Winder, and therefore the District is "estopped from denying the contract is enforceable." Pl.'s Opp'n at 7-8. "To assert an estoppel effectively, [petitioner] must show that: (1) the District made a promise to him; (2) he suffered injury due to reasonable reliance on it; and (3) the promise must be enforced to prevent injustice and promote the public interest." Chamberlain v. Barry, 606 A.2d 156, 158 (D.C. 1992); accord Leekley v. Dist. of Columbia Dep't of Emp't Servs., 726 A.2d 678, 680 (D.C. 1999). "[W]hen the agent of the government whose representations are relied upon plainly lacks the authority to do whatever he has promised," however, "the promisee's reliance cannot be 'reasonable.'" Brookstowne Cmty. Dev. Co., 987 A.2d at 450 (internal citation omitted). "This is because 'a person making or seeking to make a contract with the District is charged with knowledge of the limits of the agency's (or its agent's) actual authority . . . . [A] party contracting with the government is 'on

12

constructive notice of the limits of the [government agent's] authority,' and cannot reasonably rely on representations to the contrary.'" Id. (quoting Greene, 806 A.2d at 806); see also Mamo v. District of Columbia, 934 A.2d 376, 386 (D.C. 2007) (holding that estoppel was not applicable where a District employee, who signed a letter promising that plaintiff would be compensated for his leasehold interest, business, and goodwill, did not have authority to commit the District to pay business loss and goodwill damages); District of Columbia v. Stewart, 278 A.2d 117, 119 (D.C. 1971) (holding that the District cannot be estopped from bringing an action for reimbursement where District employee did not have authority to relieve a decedent or his estate from a statutory obligation to pay the full cost of his mental health care and maintenance). Indeed, the D.C. Circuit has explained that, when a plaintiff relies on a government official without authority to contract or make promises, "the government is not bound by the statements or assurances of its officers where the actual authority to make such statements or assurances is lacking." ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104, 1111 (D.C. Cir. 1988). "As the Supreme Court has made clear, parties dealing with the government 'are expected to know the law and may not rely on the conduct of Government agents contrary to law.'" Id. (quoting Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 63 (1984)).

Here, Winder argues that, because he relied on Erste's representation, "the District is estopped from denying the contract is enforceable." Pl.'s Opp'n at 8. Winder, however, is charged with knowledge that Erste did not have the authority to bind the District to a one-year employment contract. Accordingly, to the extent Winder relied on his understanding that he was entering into a one-year contract, his reliance was unreasonable, because "a person making . . . a contract with the District is charged with knowledge of the limits of the agency's (or its agent's) actual authority." Greene, 806 A.2d at 222. Hence, Winder's argument for estoppel fails.

Summary judgment in favor of the District is appropriate on Winder's breach of contract claim because the purported employment contract is unenforceable. Erste was not authorized to enter into a contract with Winder, and Winder is charged with knowledge of Erste's lack of authority. There is no genuine dispute of material fact, and the District is entitled to judgment as a matter of law. The Court need not consider the District's other argument that Winder was either a Career Services employee or an Executive Services employee. Hence, Winder's motion to strike the District's Executive Service argument is moot.

## **CONCLUSION**

For the reasons set forth above, the Court will grant the District's motion for summary judgment and will deny as moot Winder's motion to strike. A separate Order has been issued on this date.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: July 23, 2014